Penny Sue ADAMS, Guardian
for Adam Gaylard Bettis,

v.

JOHN HANCOCK MUTUAL LIFE
INSURANCE COMPANY, et al.

Civ. No. A--91--CA--433.

United States District Court,
W.D. Texas,
Austin Division.

July 31, 1992.

**564**

Michael D. Thompson, Michael D. Thompson, P.C., Thomas C. Moody, Thompson & Moody, Austin, Tex., for plaintiff.

John T. Anderson, R. James George, Jr., Graves, Dougherty, Hearon & Moody, Austin, Tex., for defendants.

George B. Slade, Clark, Thomas, Winters & Newton, Austin, Tex., for Conrad P. Werkenthin, independent executor of the Estate of Dale G. Bettis.

## ORDER

NOWLIN, District Judge.

Before the Court is Defendants' Motion for Summary Judgment, filed on January 31, 1992. The Defendants request summary judgment based upon the affirmative defense of misrepresentations by the deceased, Dale Bettis, in his initial application for coverage. On July 29, 1992, this Court held a hearing on this matter. Having reviewed and considered this motion, the responses, the further pleading, and the oral argument of counsel for the parties, this Court is of the opinion that this motion should be DENIED.

## I. BACKGROUND

This case involves a life insurance policy. The plaintiff, Penny Sue Adams, is the former wife of Dale Bettis, who is the deceased. Ms. Adams is suing as a guardian for and on behalf of Adam Bettis, the minor son of herself and the deceased. The plaintiffs seek to recover benefits allegedly due under a group life insurance policy issued to Defendant Armed Forces Benefit Association by Defendant John Hancock Mutual Life Insurance Company. The deceased, Dale Bettis, was a member of the Armed Forces Benefit Association. The plaintiff seeks to prove that at the time of Dale Bettis's death that the deceased was insured by the group life insurance policy and that Adam Bettis, the son, was the beneficiary of the policy.

The Defendants assert that the deceased made false representations on his application for coverage under the policy. The Defendants argue that, on the application, the deceased certified that he was in good health and never had any major illnesses. The Defendants argue that the deceased suffered from and was treated for a serious form of cancer, metastatic melanoma, from 1979 through 1983. The defendants also allege that: the deceased visited a physician for depression in November of 1986; the deceased visited a doctor for hypertension in February of 1988; and, on March 4, 1988, Mr. Bettis was diagnosed as having a left ventricular disfunction suggesting a cardiomyopathy.

Dale Bettis's application for coverage under the policy appears to have been dated by him on March 8, 1988. The application has a date of April 4, 1988, stamped as the effective date in the section designated for use by the insurer only.

This case was removed from state court on the basis of diversity jurisdiction. The plaintiff seeks to recover the benefits allegedly due under a life insurance policy insured by the defendants. As a defense to liability, the defendant insurers allege that the deceased insured materially misrepresented his medical condition and history, thereby violating the policy and terminating anyone's rights to the benefits.[1]

---

1. The parties vigorously disputed whether the deceased's medical records were discoverable

under Texas law. In an order, filed on April 30, 1992, this Court ruled that these records are

The application filled out and signed by the deceased, Dale Bettis, included the following provision that was surrounded by a box and was, for the most part, in a typeface slightly smaller in size than the rest of the material printed on the application:

CERTIFICATION BY MY SIGNATURE below I hereby apply for *Membership and Group Term Life Insurance* issued to the Association by the Underwriters and do attest that the statements below and the answers, each of which I have read, are complete, true and correctly recorded, and shall form the basis for and be a part of the contract of insurance. I understand that this insurance on my life and my dependents including my spouse and each eligible child *will become effective* when approved by the Association (if not approved within 60 days of receipt, this application deemed declined and payment refunded). *I CERTIFY THAT:* A. If a member of the National Guard or Selected Reserve, *I receive pay for drilling or training,* either unit assigned or as an individual mobilization augmentee. B. *I and my dependents are in good health* and not under medical care nor have we ever had any major illness, injury or disease, i.e., heart disease, cancer, AIDS, etc., nor have we been hospitalized or consulted any physician within the past five years (exclusive of colds, minor virus infections, minor injuries and required military service examinations). Note: If any element of this statement is not true, specify who and the nature of the problem and current status so that medical evaluation forms, if necessary can be sent to you. *(Attach sheets as necessary)*

*See Armed Forces Relief & Benefit Association,* Application For Membership And Group Term Life Insurance (emphasis in original), attached as Exhibit A to Plaintiff's Motion for Summary Judgment.

## II. THE RELEVANT LEGAL ISSUES

■ The first matter that needs to be considered is exactly what was done with the insurance application. Contrary to the express argument by the defendants, the Texas Insurance Code does contain a provision concerning the required attachment of and admissibility of applications to group life insurance policies:

(3) A provision that a copy of the application, if any, of the policyholder shall be attached to the policy when issued, that all statements made by the policyholder or by the persons insured shall be deemed representations and not warranties, and that *no statement made by any person insured shall be used in any contest unless a copy of the instrument containing the statement is or has been furnished to such person or to his beneficiary.*

Tex.Insur.Code Ann. art. 3.50 § 2(3) (Vernon's Supp.1992) (emphasis added). This statutory provision has been construed by the Texas Supreme Court. *See Johnson v. Prudential Insurance Co. of America,* 519 S.W.2d 111 (Tex.1975). In *Johnson,* the insurance company contended that it need only furnish a copy of the application to the insured *"or to his beneficiary"* by the time the application is offered into evidence. *See id.* at 113. The Texas Supreme Court disagreed. *Id.* This statutory provision requires that a copy of the application be attached to the policy. *Id.* The legislature intended "that the insured have the material terms of the contract at hand during his lifetime in order that he might examine and correct any misrepresentations which have been made the basis of insurance coverage." *Id.* The Texas Supreme Court recognized that:

Attachment of the application to the policy may be beneficial to the insurance company as well as to the insured, because the knowledge of the insured of the statements contained in the application is thereby conclusively established.

*Id.* at 114 (citation omitted). In conclusion, the Texas Supreme Court held that:

... [Article 3.50, Section 2(3) of the Texas Insurance Code] requires the insurer to furnish promptly to the individual insured copies of his application or other

discoverable, because the privilege does not apply in this action.

written statements material to the issuance of his coverage. Should the insured die immediately after his coverage is effective and before the insurer has had reasonable opportunity to furnish him with these copies, they may be furnished to the beneficiary. Failure to comply with this requirement will mean, as the statute says, that statements may not be used by the insurance company in contesting payment of the benefit.

*Id.* at 115. Therefore, if the insurer had a reasonable opportunity to furnish a copy of the application to the insured in this case and failed to do so, the written statements in the application cannot be used by the insurer to contest coverage.[2]

Because the counsel for the defendants stated that he was unaware of any evidence concerning the attachment of the application to the policy or the transmission of the processed application to the insured, this Court cannot apply as evidence against the insured his alleged misrepresentations in the application. If the application was not returned to the insured within a reasonable time after he had mailed it in, all of the statements therein would be inadmissible, under Texas law, in this action contesting the payment of benefits under the group policy.

■ If the application is admissible, the defendants insurers have the burden to prove an intentional material misrepresentation by the insured. The Texas Supreme Court has enumerated five elements that must be pled and proved by an insurer to avoid a policy because of the misrepresentations of the insured:

(1) the making of the representation;

(2) the falsity of the representation;

(3) reliance thereon by the insurer;

(4) the intent to deceive on the part of the insured making same; and

(5) the materiality of the representation.

*Mayes v. Massachusetts Mutual Life Insurance Co.,* 608 S.W.2d 612, 616 (Tex. 1980) (citations omitted); *see also Albany Insurance Co. v. Anh Thi Kieu,* 927 F.2d 882, 891 (5th Cir.1991) *cert. denied,* —— U.S. ——, 112 S.Ct. 279, 116 L.Ed.2d 230 (1991). The Texas Supreme Court also recognizes the rule that when an application for insurance is attached to and made a part of the policy and is accepted and retained by the insured, the insured is conclusively presumed to have knowledge of its contents and to have ratified any false statements therein. *Id.* 608 S.W.2d at 617 (citing *Odom v. Insurance Company of the State of Penn,* 455 S.W.2d 195 (Tex. 1970)). The Fifth Circuit has recognized that the *Mayes* decision clearly implies that the insured's intent to deceive or induce issuance of a policy can be established as a matter of law. *See Lee v. National Life Assurance Co.,* 635 F.2d 516, 517 (5th Cir. 1981).

■ Texas courts do apply some general rules in construing insurance policies and the relevant law. The courts construe insurance statutory and policy provisions liberally in favor of the public and the insured. *Johnson,* 519 S.W.2d at 113. Because insurance policies are contracts, the rules of construction generally applicable to contracts apply. *See Barnett v. Aetna Life Insurance Co.,* 723 S.W.2d 663 (Tex. 1987) (citations omitted). If the insurance policy is expressed in plain and unambiguous language, a court cannot resort to the rules of construction. *Id.* (citation omitted). However, under the longstanding law in Texas, when the language in a policy is susceptible to more than one construction, the language is "patently ambiguous." *See id.*

---

2. The Fifth Circuit has held that a life insurer's failure to deliver a copy of the application to the policyholder did *not* preclude the insurer from relying upon the insured's misrepresentations to rescind the policy. *See Wise v. Mutual Life Insurance Co.,* 894 F.2d 140, 141 (5th Cir.1990). The *Wise* court based its decision upon an old Texas case, *First Texas Prudential Insurance Co. v. Pedigo,* 50 S.W.2d 1091 (Tex.Com.App.1932).

The *Wise* court stated that the decision in *Johnson v. Prudential Insurance Co.,* 519 S.W.2d 111 (Tex.1975) only concerned *group* life insurance policies. *Wise,* 894 F.2d at 141. The present case involves a group life insurance policy and article 21.35 of the Texas Insurance Code has been revised. Therefore, *Wise* is inapplicable to the present situation.

When the language chosen in an insurance policy is susceptible of more than one construction, such policies should be construed strictly against the insurer and liberally in favor of the insured. *Id.* at 666 (citations omitted). When a case involves an exception or limitation on an insurer's liability under a policy, an even more stringent construction is applied. *Id.*

Under Texas law, the words and clauses of insurance contracts are strictly construed against the insurer. *See Chen v. Metropolitan Insurance and Annuity Co.*, 907 F.2d 566, 569 (5th Cir.1990) (citation omitted). If a word or clause has more than one meaning, then the meaning favoring the insured must be applied. *Id.* (citing *Glover v. National Insurance Underwriters*, 545 S.W.2d 755, 761 (Tex. 1977)). If the clause may be interpreted as a limiting term or as an exclusionary clause, the insured's reasonable construction of the clause must be adopted, even if the insurer's construction is more reasonable. *Id.*

Texas law requires that the insurer plead and prove that the insured made the misrepresentation "willfully and with design to deceive or defraud." *See Albany Insurance Co.*, 927 F.2d at 891 (citing to *Soto v. Souther Life & Health Insurance Co.*, 776 S.W.2d 752, 756 (Tex.App.—Corpus Christi 1989, no writ)) (other citations omitted). An insured's false statements which are made because of negligence, mistake, and/or carelessness are not sufficient to invalidate an insurance policy on the basis of an insured's misrepresentation of a material fact. *Id.* at 892; *Soto*, 776 S.W.2d at 756. In *Albany Insurance Company*, the court concluded that the insurer showed that the insured who could not easily understand English was, at most, careless in her completion of the application. *Id.* at 892. Under Texas law, a material misrepresentation in an insurance application does not defeat recovery if the misrepresentation was made innocently and in good faith. *See Enserch Corp. v. Shand Morahan & Co., Inc.*, 952 F.2d 1485, 1497 (5th Cir.1992) (footnote omitted). The Texas Supreme Court has specifically rejected a "should have known" standard for life insurance policies because such a standard would allow a jury to void a policy based upon a *negligent* misrepresentation. *Id.* at n. 19 (citing to *Allen v. American National Insurance Co.*, 380 S.W.2d 604, 608 (Tex.1964)).

Various Texas courts have addressed situations with facts similar to the present situation. Although he had been treated for hypertension and hospitalized for a heart condition, an insured's misrepresentations on the application for an insurance policy did not demonstrate an intent to deceive as a matter of law, even though the insured had admitted a health problem on a previous, unrelated medical information form. *See Flowers v. United Insurance Co.*, 807 S.W.2d 783, 784–786 (Tex. App.—Houston [14th Dist.] 1991, n.w.h.). The *Flowers* court held that an insured's mere knowledge of his or her own health condition is insufficient to prove intent to deceive as a matter of law. *Id.* at 786. The court held the insurer's showing that the insured knew about his heart problem and made false statements concerning his health did not prove as a matter of law the insured's intent to deceive. *Id.*

Another Texas court has held that an insured's representation in an application for a life insurance policy was a material misrepresentation when the policy itself stated that it was issued based upon the applicant's representation of good health, but the court held that there was no intent to deceive as a matter of law. *See Estate of Diggs v. Enterprise Life Insurance Co.*, 646 S.W.2d 573, 575 (Tex.App.— Houston [1st Dist.] 1982, writ ref'd n.r.e.) (rehearing denied, 657 S.W.2d 813 (1983)). Absent warranty or collusion, an intent to deceive cannot be presumed as a matter of law when the insured who had a long history of heart ailments had made false statements on his application. *Id.* at 576. The court limited the Fifth Circuit's holding in *Lee* that summary judgment could be established as a matter of law only if there was a warranty that the facts contained in the application are true or evidence of collusion between the applicant and the insur-

ance agent. *Id.*[3] In a more recent opinion, the same Texas Court of Appeals has stated that "intent to deceive or induce the issuance of an insurance policy can never be proved as a matter of law to establish the defense or misrepresentation." *See Cartusciello v. Allied Life Insur. Co. of Texas*, 661 S.W.2d 285, 288 (Tex.App.—Houston [1st Dist.] 1983, no writ).

A Texas court of appeals has reversed a summary judgment issued in favor of the insurer where the insured signed a life insurance contract that contained a "good health" representation clause. *See Carter v. Service Life & Casualty Insur. Co.*, 703 S.W.2d 349, 350 (Tex.App.—Corpus Christi 1985). Even though the insurer presented an affidavit by its Assistant Secretary and Claims Manager stating that the insurer would never have accepted the certificate of insurance if the insurer had known that the insured was an insulin-dependent diabetic at the time the insured purchased the insurance. *Id.* at 350–351. The Texas court also referred to article 21.16 of the Texas Insurance Code to support its decision reversing the summary judgment and remanding the case for trial. *Id.* at 352.

The insured has no duty to correct answers made in an initial application that later become untrue even if the insurer has not yet approved the application. *See Mayes*, 608 S.W.2d at 616 and 617. Indeed, the Texas Supreme Court has held that there is no duty imposed on an insured to correct a *misrepresentation* by the in an application. *See id.* (referring to *Stipcich v. Metropolitan Life Insurance Co.*, 277 U.S. 311, 48 S.Ct. 512, 72 L.Ed. 895 (1927)) (emphasis in original).

Certain Texas statutory provisions are applicable to the present situation. A statutory provision applies to allegations of misrepresentations affecting an insurance policy:

> Any provision in any contract or policy of insurance issued or contracted for in this State which provides that the answers or statements made in the application for such contract or in the contract of insurance, if untrue or false, shall render the contract or policy void or voidable, shall be of no effect, and shall not constitute any defense to any suit brought upon such contract, unless it be shown upon the trial thereof that the matter or thing misrepresented was material to the risk or actually contributed to the contingency or event on which said policy became due and payable, and whether it was material and so contributed in any case shall be a question of fact to be determined by the court or jury trying such case.

Texas Ins.Code Ann., art. 21.16 (Vernon's 1981). Significantly, the certification clause at issue in this case nowhere states that the policy or contract is void or voidable or contestable based upon a material misrepresentation by the insured. The Insurance Code further provides that:

> Except as otherwise provided in this code, every contract or policy of life insurance issued or contracted for in this State shall be accompanied by a written, photographic or printed copy of the application for such insurance policy or contract, as well as a copy of all questions asked and answers given thereto. ....

*Id.* at art. 21.35 (Vernon's Supp.1992).[4]

### III. CONCLUSION

Because the defendant insurer has not shown that a copy of the processed application was returned to the insured, any statements therein cannot be used to contest payment of benefits under the policy. Under the current law of Texas, any misrepre-

---

3. In its opinion denying the motion for rehearing the *Diggs,* court specifically declined to follow the statement concerning the possibility of proving intent to deceive as a matter of law by the Fifth Circuit in the *Lee,* 635 F.2d at 517, opinion. *See Estate of Diggs v. Enterprise Life Insurance,* 657 S.W.2d 813 (Tex.App.—Houston [1st Dist.] 1983).

4. This provision was amended to be effective for all claims filed with an insurer for payment on or after September 1, 1989. *See* "Historical and Statutory Notes," Tex.Ins.Code Ann. art. 21.35 (Vernon's Supp.1992). This amendment is applicable to the present action. The only substantive change to this provision was the insertion of the word "life" before the first use of the word "insurance."

sentations in the application for an insurance policy cannot alone establish an intent to deceive by the insured as a matter of law.

ACCORDINGLY, IT IS ORDERED that the Defendants' motion for summary judgment is DENIED.