865 F.Supp. 596 (1994)
Irma J. COOTS, Plaintiff,
v.
UNITED EMPLOYERS FEDERATION and Durham Life Insurance Company, Defendants.
No. 1:93CV79SNL.
United States District Court, E.D. Missouri, Southeastern Division.
October 4, 1994.
*597 Donald Rhodes, Bloomfield, MO, for plaintiff.
Mike W. Bartolacci, Thompson & Mitchell, St. Louis, MO, for defendants.

MEMORANDUM
LIMBAUGH, District Judge.
Plaintiff seeks medical benefits allegedly due pursuant to a group medical insurance policy provided by defendant United Employers Federation and issued by defendant Durham Life Insurance Co. This matter is before the Court on the defendants' motion for summary judgment (as regards the plaintiff's second amended complaint and the defendants' amended counterclaim for declaratory judgment) (# 22), filed August 15, 1994. This case is set for trial on the Court's trial docket of October 3, 1994.
Courts have repeatedly recognized that summary judgment is a harsh remedy that should be granted only when the moving party has established his right to judgment with such clarity as not to give rise to controversy. New England Mut. Life Ins. Co. v. Null, 554 F.2d 896, 901 (8th Cir.1977). Summary judgment motions, however, "can be a tool of great utility in removing factually insubstantial cases from crowded dockets, freeing courts' trial time for those that really do raise genuine issues of material fact." Mt. Pleasant v. Associated Elec. Coop. Inc., 838 F.2d 268, 273 (8th Cir.1988).
Pursuant to Fed.R.Civ.P. 56(c), a district court may grant a motion for summary judgment if all of the information before the court demonstrates that "there is no genuine issue as to material fact and the moving party is entitled to judgment as a matter of law." Poller v. Columbia Broadcasting System, Inc., 368 U.S. 464, 467, 82 S.Ct. 486, 488, 7 L.Ed.2d 458 (1962). The burden is on the moving party. Mt. Pleasant, 838 F.2d at 273. After the moving party discharges this burden, the nonmoving party must do more than show that there is some doubt as to the facts. Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Instead, *598 the nonmoving party bears the burden of setting forth specific facts showing that there is sufficient evidence in its favor to allow a jury to return a verdict for it. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S.Ct. 2505, 2510-11, 91 L.Ed.2d 202 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).
In passing on a motion for summary judgment, the court must review the facts in a light most favorable to the party opposing the motion and give that party the benefit of any inferences that logically can be drawn from those facts. Buller v. Buechler, 706 F.2d 844, 846 (8th Cir.1983). The court is required to resolve all conflicts of evidence in favor of the nonmoving party. Robert Johnson Grain Co. v. Chem. Interchange Co., 541 F.2d 207, 210 (8th Cir.1976). With these principles in mind, the Court turns to an examination of the facts.
Plaintiff's husband, Lan Coots, owns and operates a farm supplies business known as Lanco, Inc. The only employees of Lanco, Inc. (other than Lan Coots) were Mark and Michael Coots, the sons of the plaintiff and her husband.
The Coots were desirous of obtaining medical insurance for themselves and their families. In order to obtain group medical insurance, Lanco, Inc. applied for membership in the defendant United Employers Federation (UEF) as an employer. UEF administers a plan which offers a group medical insurance policy underwritten by defendant Durham Life Insurance Co. The Coots family, including the plaintiff, applied for and obtained medical insurance coverage.
Prior to obtaining insurance coverage, Mr. Coots (as the member employer) was required to fill out an application form on behalf of himself and the plaintiff. Affidavit of Nancy Patton. The application seeks a variety of medical information about the applicant(s). Defendants' Exhibit 2. It states in pertinent part:
10. To the best of your knowledge or belief, has any proposed covered person ever had sought or received advice for, or been treated for any of the following? (If yes, give details below) (Circle Condition).
a. Thyroid disorder, diabetes, albumin, sugar in urine, kidney, or urinary tract disorder?
b. Allergies, asthma, tuberculosis, disorder of the eyes, ears, nose, throat, or respiratory system?
c. Heart disease, chest pain, heart murmur, rheumatic fever, stroke, high blood pressure, anemia or disorder of the blood?
d. Arthritis, gout, rheumatism or disorder of the back, spine, bones, muscles, or joints?
e. Liver, stomach, intestine, or rectal disorder?
f. Cyst, tumor, cancer, or growth of any kind?
g. Any disorder of the reproductive organs or breasts?
h. Mental or nervous disorder, drug addiction, or alcoholism, or arrested for driving under the influence of drugs or alcohol?
11. Are you (or any eligible dependent) taking, or has any physician or other practitioner recommended that you take medication of any kind?
---------------
15. Has any proposed covered person been sick, injured, received treatment, had medical tests, taken medication, consulted a doctor, or other practitioner, or been hospitalized within the past five years for any condition not already listed?
16. Is there any reason to believe that any proposed covered person is not in good health, mentally or physically, and free from any impairment, deformity, or infirmity?
---------------
Mr. Coots, on behalf of himself and the plaintiff, answered No to all of the above-cited questions, except to Question 10(a) wherein Mr. Coots noted that he had been treated recently for kidney stones. Defendants' Exhibit 2.
At the beginning of the questionaire/application, it states: "Please complete ALL of the following questions. Failure to divulge complete facts will result in ALL COVERAGE *599 BEING CANCELLED AS OF THE ORIGINAL ISSUE DATE." At the end of the questionaire/application, it states:
"This is to certify that I have received the summary of benefits, Form No. G3465, and I understand the benefits and exceptions, including pre-existing general limitations and coordination of benefits. The statements and answers in this application are complete and true to the best of my knowledge and belief, and I understand that the answers to the above questions shall be the basis of any coverage issued; and that any incorrect answers may operate to void this insurance. I UNDERSTAND THAT NO INSURANCE WILL BE IN FORCE UNTIL APPROVED BY THE INSURANCE COMPANY."
Both the plaintiff and her husband signed the insurance application form, dated October 2, 1991. Defendants' Exhibit 2.
On December 27, 1991 UEF Vice-President Amy Pryor wrote to the plaintiff's husband requesting that he review the insurance application form for accuracy. In her letter she states:
"Since our actions are based upon the information submitted on the application we ask that you check your answers to the questions carefully to assure that all health questions have been answered accurately and completely ... Incorrect, omitted, or incomplete information that materially effects underwriting may cause a claim to be denied and/or coverage to be voided."
Defendants' Exhibit 3.
On June 23, 1992, plaintiff was taken to the emergency room at Doctors Regional Medical Center in Poplar Bluff, Missouri suffering from acute gastrointestinal bleeding and hypovolence shock. Following efforts to stabilize her, she was admitted to the hospital. Defendants' Exhibit 4. According to the consultation report of Dr. Mark Bauman, dated June 23, 1992, plaintiff's family had informed him that the plaintiff "has had some bleeding episodes and ulcers in the past.". Furthermore, "[s]he'd been treated with Tagamet in the past with good result but hasn't been taking it recently." As to her medication, Dr. Bauman was informed that "[s]he takes a lot of Tums, takes a cholesterol pill but she doesn't know what it is, takes a lot of Tylenol # 3, and some sort of sleeping pill." Finally, Dr. Bauman relates that the plaintiff's son "counseled me in private that she probably does a fair amount of mind bending drugs but doesn't know what they are." Defendants' Exhibit 4.
As to her medical treatment history, Dr. Bauman's consultation report states that "[i]n terms of surgical procedures, she is status post appendectomy, total abdominal hysterectomy, ovaries are intact. She had a bladder tack × 2, breast biopsy because of fibrocystic disease ... [s]he had a hemorrhoidectomy. She has chronic ongoing reflux with problems related to that." Defendants' Exhibit 4.
In his discharge summary report, dated June 26, 1992, Dr. Bauman states (in the section of the report entitled HISTORY OF PRESENT ILLNESS) that "[p]ast medical history has been pertinent for a history of peptic ulcer disease with episodes of previous bleeding and ulcers in the past." He further states that "[s]he is status post hysterectomy and has had previous bleeds as noted. He notes that at the time of admission, she "apparently had not been taking any medicine"; however, with regard to the laboratory results, he notes that "[s]he apparently had been taking Percocet which contains Phenobarbital and because of concern about that, she was put on a tapering dose of Phenobarbital." Defendants' Exhibit 6. Finally, in the section of his report entitled HOSPITAL COURSE, Dr. Bauman states that "[s]he (referring to the plaintiff) has been treated with Tagamet in the past but hadn't been taking it prior to admission." He further notes that "[s]he was scoped the morning following admission and was found to have a large peptic ulcer that was covered with clot." In his concluding remarks, he states that he wanted to keep her hospitalized longer but that the plaintiff and her family insisted that she be released. Her post-hospitalization follow-up care was to include a return visit to Dr. Bauman for blood work-up, and to later scope her to confirm that her ulcer had healed. Dr. Bauman also intended to perform a biopsy with a Clo test to look for H. bacter pylori. With regard to *600 the planned biopsy, Dr. Bauman states "[i]t is recognized that this a still a somewhat controversial problem given her long term peptic acid disease." Defendants' Exhibit 6.
On July 3, 1992 Dr. Bauman's progress notes confirm his intention to perform a biopsy with a Clo test to look for H. bacter pylori due to the fact that "[s]he's had peptic ulcer disease for many years ...". Defendants' Exhibit 7.
While hospitalized in June of 1992, plaintiff was also tended to by Dr. E.T. Hansbrough. He conducted an esophagogastro-duodenoscopy on the plaintiff. His report indicates that "[t]he mid portion of the stomach had erosions of several areas ... [t]here was no active bleeding at the present time." Defendant's Exhibit 8. In addition to the erosions, a duodenum ulcer was found on the anterior wall of the stomach. Defendants' Exhibit 8.
Following her hospitalization and post-hospitalization medical treatment, plaintiff submitted a claim for medical expense benefits regarding said hospitalization and medical care. On September 22, 1992 UEF Vice-President Sandra Johnson wrote Mr. Coots noting that Doctors Regional Medical Center's medical records for the plaintiff indicated a long-standing past history of ulcer disease. Ms. Johnson requested further information and the names of doctors who had previously examined and/or treated the plaintiff in connection with ulcer disease; and identification of the doctor who had prescribed her Tagamet. Defendants' Exhibit 9. Mr. Coots returned the letter with a hand-written note which states:
Ms Johnson,
Irma has NEVER been diagnosed as having a peptic ulcer. Dr. Tom Henderson (Doctors Park Dexter, Mo.63841) has prescribed Tagamet for a nervous stomach.
 Thank you,
 Lan Coots
Defendants' Exhibit 9.
Further investigation into the plaintiff's claim for medical benefits pertaining to the hospitalization and medical care of the plaintiff's ulcer in June 1992 revealed an extensive past medical history for the plaintiff. On April 3, 1978 plaintiff was examined by Dr. John T. Blair following a Marshall-Marchetti procedure. His records indicate that he intended to "[m]ake appointment with Dr. Catron in 2 weeks for evaluation of her (referring to the plaintiff) of her ulcer symptoms." Defendants' Exhibit 5. The medical records for the plaintiff, from April 1978 through March 1991, indicate constant complaints by the plaintiff of chronic abdominal pain. Defendants' Exhibit 5.
Plaintiff's medical records also indicate a variety of medical conditions for which the plaintiff sought treatments. The records show that as of 1978 plaintiff had had a hysterectomy, and that between the years 1978 to 1991, plaintiff had, including but not limited to, frequent urinary tract infections, migraine headaches, tonsillitis (requiring a tonsillectomy), chronic chest pain, and an injury to a finger requiring stitches. Defendants' Exhibit 5. These same records show medications prescribed to the plaintiff, as including but not limited to, Tagamet, Darvocet-N 100, Percodan 30, Histaril 50, Amitriptyline 50-100, Naprosyn 250, Tetracycline 500, Empirin # 3, Tylenol # 3, Demerol, Indocin Sr 75, Inderal La, Phenergan, Darvon Compound 65, Pyridium, Percodan # 25, Vistaril 50, Zydone # 10, Meprobamate 400, Vicodin DS, Motrin 600, and Elavil. Defendants' Exhibit 5. The medical records also show that her regular doctors (Blair and Hamilton) were increasingly concerned over the plaintiff's repeated requests for narcotics (i.e. prescribed pain pills such as Darvon, Percodan, and Tylenol # 3).
On January 26, 1993, defendants wrote Mr. Coots informing him that the plaintiff's claim for medical expenses benefits for the time-period of June 23 through July 3, 1992 was rejected. Defendants' Exhibit 11. Plaintiff and her husband were further informed that the reason for rejection of her claim was the omission of medical history information which the defendants considered material to the underwriting decision. Furthermore, plaintiff and her husband were informed that given the omission of this material information, all coverage was terminated retroactive to January 1, 1992; consequently, plaintiff was not eligible for benefits at the time expenses were incurred. Defendants' Exhibit *601 11. Enclosed with the letter was a check in the amount of $2,330.61 representing a full refund of all premiums paid under the policy. Defendants' Exhibits 11 and 12.
Plaintiff originally filed suit in state court against defendants alleging breach of contract and vexatious refusal to pay medical benefits. The case was removed to federal court on the basis of federal jurisdiction in that defendants averred that plaintiff's cause of action was actually one under the Employee Retirement Income Security Act (ERISA). Plaintiff sought to remand her cause of action; however, on July 30, 1993 this Court denied the plaintiff's motion to remand. The Court found that the group insurance plan (administered by defendant UEF) which offered the subject group medical insurance coverage (underwritten by defendant Durham Life Insurance Co.) was an employee welfare benefit plan as defined under ERISA. Thus, the Court held that plaintiff's claims for breach of contract and vexatious refusal to pay medical benefits was preempted by ERISA.
Plaintiff then filed a second amended complaint alleging a state law claim for vexatious refusal to pay medical benefits under § 375.420 R.S.Mo. and a claim under ERISA. Defendants have counterclaimed for a declaratory judgment voiding the subject policy. They also seek summary judgment on all claims in their favor and against the plaintiff.
Plaintiff does not dispute the facts or evidence submitted by the defendants for the record. She does not dispute any of her medical history or the fact that none of it was referred to on the insurance application. She simply claims that whatever treatment or medication she had received for the many years prior to applying for insurance was for a "nervous stomach". She further contends that any omission of medical information regarding ulcers or her other medical ailments is not a viable defense, under Missouri law, to a claim for vexatious refusal to pay medical benefits. She cites Missouri statute § 376.800 R.S.Mo. for this proposition; and further claims that any issue regarding materiality is a question for the jury. Plaintiff's reliance upon state law is completely misplaced and her argument meritless.
Plaintiff's cause of action is grounded in ERISA. As clearly pointed out in this Court's order of July 30, 1993 plaintiff's state law claims for breach of contract and vexatious refusal to pay medical benefits are preempted by ERISA. ERISA provides the exclusive remedy for any recovery the plaintiff may be entitled to in this cause of action. Plaintiff's insistence on alleging a state law claim for vexatious refusal to pay medical benefits in her second amended complaint does not alter this jurisdictional fact; and such claim is stricken from her complaint.
Missouri statute § 376.800 R.S.Mo. reads as follows:
376.800. Misrepresentation made in obtaining individual accident and health policy no defense, exception
Anything in the law to the contrary notwithstanding, no misrepresentation made in obtaining or securing a policy of insurance covered by sections 376.770 to 376.800 shall be deemed material or render the policy void, or constitute a defense to a claim thereunder unless the matter misrepresented shall have actually contributed to the contingency or event on which any claim thereunder is to become due and payable, and whether it so contributed in any case shall be a question for the jury.
The provisions of § 376.800 R.S.Mo. simply do not apply to the policy at issue. This statute is only applicable to individual accident and health policies. Plaintiff's insurance coverage is provided pursuant to a group medical insurance policy. Missouri statute § 376.790 R.S.Mo. clearly exempts such coverage from the provisions of § 376.800. Section 376.790 reads in pertinent part:
"Nothing in sections 376.770 to 376.800 shall apply to or affect ... (3) any blanket or group policy of insurance ...".
Consequently, plaintiff's sole basis for opposing the granting of summary judgment fails.
Furthermore, this cause of action is one grounded in ERISA. Since this is an ERISA action, plaintiff is not entitled to a jury. Kirk v. Provident Life & Acc. Ins. Co., 942 F.2d 504, 506 (8th Cir.1991); In Re *602 Vorpahl, 695 F.2d 318, 319-22 (8th Cir.1982); Garred v. General American Life Ins., 774 F.Supp. 1190, 1201 (W.D.Ark.1991); Baker v. Universal Die Casting, Inc., 725 F.Supp. 416, 418 (W.D.Ark.1989); Hollenbeck v. Falstaff Brewing Corp., 605 F.Supp. 421, 430-31 (E.D.Mo.1984) aff'd, 780 F.2d 20 (8th Cir. 1985); Marian Holloway v. Eastern Electric Apparatus Repair Co., Cause No. 4:94CV769 (order filed August 24, 1994) (Limbaugh, J.); see also, Bair v. General Motors Corp., 895 F.2d. 1094 (6th Cir.1990); Pegg v. General Motors Corp., 793 F.Supp. 284 (D.Kan.1992); East v. Long, 785 F.Supp. 941 (N.D.Ala. 1992), but see, Brasher v. Prudential Ins. Co. of America, 771 F.Supp. 280, 281 (W.D.Ark. 1991).
Finally, § 376.800 R.S.Mo. is preempted by ERISA because it is not a statute which "regulates" insurance. Section 514(a) of ERISA provides that the provisions of ERISA preempt any state law that relates to an employee benefit plan. 29 U.S.C. § 1144(a). However, ERISA preemption is limited by a "savings clause" which expressly exempts state laws that regulate insurance, banking or securities. 29 U.S.C. § 1144(b)(2)(A). In Metropolitan Life Insurance Co. v. Massachusetts, 471 U.S. 724, 105 S.Ct. 2380, 85 L.Ed.2d 728 (1985), the Supreme Court set forth three criteria for the courts to consider in determining whether a state law falls within the "savings clause exemption" because said law is one "which regulates insurance". Id., 471 U.S. at 743, 105 S.Ct. at 2391. These three factors are: 1) whether the statute has the effect of spreading the policyholders' risk; 2) whether the statute is an integral part of the policy relationship between the insurer and the insured; and 3) whether the statute is limited to entities with the insurance industry. Id., 471 U.S. at 743-44, 105 S.Ct. at 2391. If the statute fails to meet any one of these criteria it is excluded from the ERISA savings clause. Brewer v. Lincoln National Life Ins. Co., 921 F.2d 150 (8th Cir.1990), cert. den., 501 U.S. 1238, 111 S.Ct. 2872, 115 L.Ed.2d 1038 (1991).
In Tingle v. Pacific Mutual Insurance Co., 996 F.2d 105 (5th Cir.1993), the Court reviewed a Louisiana statute similar in language and effect to § 376.800 R.S.Mo. The plaintiff in Tingle sought recovery of medical benefits relating to a back injury. Her claim was denied because the insurer discovered misrepresentations and/or omissions of medical history information regarding the fact she was a borderline diabetic and had a history of back problems. Upon learning of these misrepresentations and/or omissions, the insurer denied the claim and retroactively cancelled the policy. Id., at 106-07. The lawsuit was originally filed in state court but removed to federal court on the grounds of federal preemption by ERISA. Id., at 108.
The plaintiff claimed that her omissions/misrepresentations were not a valid defense to her lawsuit pursuant to Louisiana statute La.R.S. 22:619(B) which provides:
In any application for life or health insurance made in writing by the insured, all statements therein made by the insured shall, in the absence of fraud, be deemed representations and not warranties. The falsity or any such statement shall not bar the right to recovery under the contract unless such false statement was made with actual intent to deceive or unless it materially affected either the acceptance of the risk or the hazard assumed by the insurer.
The plaintiff argued that La.R.S. 22:619(B) was intended to regulate insurance, therefore was not preempted by ERISA. Id., at 108-09.
The Fifth Circuit Court of Appeals found that the statute did not meet all three criteria, as established in Metropolitan Life, supra., therefore the statute was not one which regulated insurance.
"Unlike the mandated benefits statute in Metropolitan Life, the instant statute does not spread the cost of health care among the policyholders in the state. Although the statute does shift the burden of innocent misrepresentations (the legal risk) onto the insurer, it does not spread the risk of insurance (health) coverage for which the parties contracted. Thus, the statute is more akin to the Mississippi law at issue in Pilot Life [Ins. Co. v. Dedeaux] [481 U.S. 41 [107 S.Ct. 1549, 95 L.Ed.2d 39] (1987)], which defined the criteria necessary for an insured to collect punitive *603 damages from an insurer. Although the statute fits the common sense definition of insurance regulation, it fails to satisfy at least one prong of the three part Metropolitan Life test. Thus, the statute does not fall within the ERISA insurance savings clause, and is, therefore, preempted by ERISA."
Tingle, at 108 (citations omitted).
This Court concurs with the analysis of the Fifth Circuit Court of Appeals in Tingle. Missouri statute 376.800 R.S.Mo. shifts the burden (i.e. legal risk) of the insured's misrepresentations to the insurer, but it does not affect in any way the substantive content of the policy itself. Consequently, this Court finds that § 376.800 R.S.Mo. fails to satisfy one prong of the three part Metropolitan Life test; thus, the statute does not fall within the ERISA insurance savings clause and is therefore preempted.
Since ERISA is silent as to the issue of the materiality of the insured's omissions or misrepresentations on a health insurance application, a federal court may refer to state law for guidance. Tingle v. Pacific Mut. Ins. Co., 837 F.Supp. 191 (W.D.La. 1993). In Missouri, misrepresentations in an application for an insurance policy may be cause for voiding the policy. American Standard Ins. Co. v. Forsythe, 915 F.2d 1212, 1214 (8th Cir.1990); Royal American Mgrs. v. Intern. Surplus Lines, 760 F.Supp. 788, 792 (W.D.Mo.1991).
"The rule in this state [Missouri], as we understand it, is that where material representations made in an application for a policy of life insurance are warranted to be true, or the policy is conditioned upon the truth of the representations, or provides that the falsity of the representations shall avoid the policy, then the representations, if in fact untrue, will avoid the policy, though the representations were innocently made. This is so because such is the contract. The insurer is entitled to stand on the contract as written, and the innocence of the insured in making the representations is a matter of no concern."
Royal American Mgrs., at 792. Thus, misrepresentations in an insurance policy are grounds for recission if the statement(s) or omission(s) are false and material, even if "innocently made".
Under Missouri law, the test of materiality is whether the answer, if truthful, might reasonably influence an insurer to reject a risk or charge a higher premium. American Standard, at 1214, citing Haynes v. Missouri Property Insurance Placement Facility, 641 S.W.2d 497, 499 (Mo.App.1982).
In the present case, the plaintiff seeks medical benefits associated with the hospitalization and treatment for an ulcer. Defendants contend that information regarding her prior history of ulcer and stomach disorders would have been material to the defendants' decision to provide her with health insurance coverage. The Court agrees.
The subject insurance application repeatedly stresses the importance of providing complete and accurate medical information. It repeatedly warns the applicant that the information provided is the basis of any coverage issued, and that incomplete or inaccurate information can be considered grounds for voiding the policy. Defendants even wrote Mr. Coots to remind him again of the importance of accurate medical information on the insurance application form and the risk of rescission of the issued policy if the information on the application is discovered to be incomplete or inaccurate. Even if Mr. Coots and the plaintiff believed that she had only been treated for a "nervous stomach" in the past, this information and the fact that she had been regularly prescribed Tagamet[1] was never mentioned by the plaintiff on the application form. The insurance application seeks an abundance of a variety of medical information because such information is extremely important to the final decision regarding issuance of insurance coverage. Affidavit of Nancy Patton. In the present case, had the defendants been made aware of the plaintiff's prior medical history for ulcers and gastritis, such information would have significantly *604 impacted upon their decision to provide the plaintiff with health insurance. Given the fact that plaintiff seeks medical benefits associated with medical treatment for an ulcer, her failure to provide medical information on her insurance application pertaining to a past history of ulcers and stomach disorders (as well as a host of other medical ailments) was material and is sufficient to void the policy.
Since the Court finds that the plaintiff's misrepresentations and/or omissions regarding her medical history were false and material, the subject insurance policy is rescinded and consequently, plaintiff is not entitled to recover any medical benefits under the policy.
Plaintiff has failed to set forth any affirmative evidence to indicate that any issues of material fact exist, consequently this Court finds that no genuine issues of material fact exist and that the defendants are entitled to judgment on the plaintiff's second amended complaint and on their counterclaim.

ORDER
In accordance with the Memorandum filed herein this day,
IT IS HEREBY ORDERED that the defendants' motion for summary judgment (# 22), filed August 15, 1994 be and is GRANTED. Judgment is entered for the defendants and against the plaintiff on the merits of her second amended complaint and their amended counterclaim for declaratory judgment.
IT IS FINALLY ORDERED that this cause of action is hereby DISMISSED and removed from the Court's trial docket of October 3, 1994.
NOTES
[1] Tagamet is routinely prescribed for the treatment of ulcers, including duodunal ulcer. Defendants' Exhibit 10  The Physician's Desk Reference.