CLYDE A. WILSON INTERNATIONAL
INVESTIGATIONS, INC. and Henry
Lee Wilson, Plaintiffs,

v.

The TRAVELERS INSURANCE
COMPANY, Defendant.

Civil Action No. H–96–1677.

United States District Court,
S.D. Texas,
Houston Division.

Feb. 28, 1997.

Tom Alexander, Alexander & McEvily, Houston, TX, for plaintiffs.

Wayne B. Mason, Strasburger & Price, Dallas, TX, for defendant.

## MEMORANDUM AND ORDER

HARMON, District Judge.

Pending before the Court in the above referenced action, challenging the rescission by Defendant the Travelers Insurance Company ("Travelers") of employee Plaintiff Henry Lee Wilson's ("Wilson's") group insurance coverage and seeking damages for wrongful denial of benefits under an employee health and benefit plan[1] covering employees of Plaintiff Clyde A. Wilson International Investigations, Inc., ("III") are the following motions: (1) Travelers' motion for summary judgment (instrument #11); (2) Plaintiffs' motion for leave to file amended complaint (#12); (3) Plaintiffs' motion for order to mediation; and (4) Plaintiffs' motion in limine (#18).

Plaintiffs' original petition states that the policy was issued by Travelers on May 1, 1995. Subsequently Wilson submitted a claim for medical bills totalling $35,203.59. On December 1, 1995, Travelers declined coverage. On February 22, 1996, Travelers' agent informed Plaintiffs that Wilson's coverage under the policy was rescinded retroactively to his coverage's effective date, October 27, 1995, and denied Wilson benefits because "a material misrepresentation was discovered on his request for group insurance that seriously impaired our ability to accurately underwrite the group's coverage." Travelers, in its motion for summary judgment, explains that in processing Wilson's claim through a routine investigation of his medical records, it discovered information about Wilson's prior health history which was inconsistent with the medical information that he disclosed in his request for group insurance.[2] Plaintiffs's original petition al-

---

1. Policy No. G/GA 3R6786 BW is a plan of group health insurance covering employer Clyde Wilson International Investigations, Inc. and employees, including Henry Lee Wilson.

2. The affidavit of Travelers' medical underwriter Beth Pavelka states that Travelers learned from medical records, copies of which are attached, that Wilson had been treated for drug abuse in 1993, i.e., within two years of the date of his application. This is the most serious of the alleged misrepresentations.

leges that Travelers violated articles 3.62, 3.62–1, and 21.21, section 16 of the Texas Insurance Code and has engaged in unfair and unlawful acts and practices in violation of the Deceptive Trade Practices–Consumer Protection Act ("DTPA"). They seek actual and punitive damages.

This case was removed from state court on the grounds that Plaintiffs' claims arise under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 *et seq.*

Attached to Plaintiffs' motion for leave to amend to clarify the nature of their claims is an amended complaint asserting claims under sections 502(a)(1)(B) and 502(a)(2) of ERISA for breach of contract and breach of fiduciary duty. The amended complaint further requests a jury.[3]

Travelers objects to the motion for leave to amend because it was filed without any explanation over two months after the docket control schedule deadline of September 23, 1996 for amendment of pleadings.

After reviewing the matter, the Court finds that the motion for leave to amend should be granted. Although the amendment is untimely, there is no surprise here as Travelers removed this case asserting ERISA preemption of what were state law claims. Moreover unless Plaintiffs are allowed to amend under ERISA, they fail to state a claim. The claims are not new, but only recharacterized under ERISA.

Travelers moves for summary judgment in part on the preempted state law claims. Because the Court has permitted the amendment to state claims under ERISA, these causes of action are moot. Still viable are Travelers' ERISA grounds that III lacks standing to bring this suit for ERISA plan benefits and that Travelers rightly rescinded Wilson's coverage under ERISA based on material misrepresentations of fact contained in his request for group insurance.

Under 29 U.S.C. § 1132 permits a suit for recovery of benefits under an employee benefit plan to be brought by a beneficiary of the plan. It is uncontroverted that III is not a beneficiary of the plan at issue, but Wilson is. Furthermore, to have standing to bring a suit,

First, the plaintiff must have suffered an "injury in fact"—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly trace[able] to the challenged action of the defendant, and not [the] result [of] the independent action of some third party not before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision [citations omitted].

*Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–61, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351 (1992). The party invoking jurisdiction of the court in his favor has the burden of establishing standing by alleging facts that show it is a proper party to invoke judicial resolution of the dispute. *United States v. Hays,* —— U.S. ——, ——, 115 S.Ct. 2431, 2435, 132 L.Ed.2d 635 (1995). Travelers argues that III has suffered no injury, has alleged no facts that demonstrate that it has suffered any injury connected to Travelers' actions. Thus it has no standing and summary judgment against III on all claims asserted by it is appropriate. Any injury suffered would be Wilson's.

Travelers further contends that under ERISA it rightfully rescinded coverage based on Wilson's material false representations in his application. *Tingle v. Pacific Mutual Insurance Co.,* 996 F.2d 105 (5th Cir.1993). *Tingle* concluded that ERISA preempted a Louisiana statute, La. R.S. 22:619(B), requiring that for rescission, a false statement in health insurance applica-

---

The policy provides a two-year period during which coverage may be rescinded if there has been a material misrepresentation at the time of application.

3. The Court would point out that Plaintiffs have no right to a jury trial under section 502 of ERISA. *Borst v. Chevron Corp.,* 36 F.3d 1308 (5th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1699, 131 L.Ed.2d 561 (1995); *Calamia v. Spivey,* 632 F.2d 1235, 1237 (5th Cir.1980).

tions be made with actual intent to deceive or to materially affect either acceptance of risk or hazard assumed by the insurer.[4] *Id.* at 107–08. Louisiana courts interpret the state's statute as requiring an insurance company to prove that the misrepresentations were made by the applicant with actual intent to deceive and that the misrepresentations materially affected the risk assumed by the insurer. *Sigari v. Louisiana Health Service and Indemnity Co.*, 580 So.2d 953 (La.App.1991). Tex.Ins. Code Ann. Art. 21.16 (Vernon's 1981) is substantially similar[5] and courts have interpreted the Texas statute as requiring the same proof of intent to deceive. *Mayes v. Massachusetts Mutual Life Ins. Co.*, 608 S.W.2d 612, 616 (Tex.1980). After determining that state law was preempted, the *Tingle* panel noted that given that ERISA is silent on misrepresentation, Congress intended that "a federal common law of rights and obligations under ERISA-regulated plans would develop."[6] and re-

manded the case to the district court to decide the case under federal common law, not the preempted statute. Thus under the law of the Fifth Circuit, federal law applies to cases involving rescission by an insurer of an insurance policy on the grounds that an applicant misrepresented material facts.

■ This Court would point out that on remand,[7] the district court of the Western District of Louisiana concluded that the majority rule in this country is that a material misrepresentation need not have been fraudulently made to avoid a policy. 837 F.Supp. at 192. It further observed that the statutes and common law of some states required that the false representation of a material fact be made with an intent to deceive or defraud or with a reckless disregard for its truth or falsity. The court emphasized that the intent behind ERISA's preemption provision was to eliminate the risk of conflicting and inconsis-

---

4. The Fifth Circuit reversed the district court's holding that the state statute falls within ERISA's insurance saving clause, 29 U.S.C. § 1144(b)(2)(A), which expressly exempts state laws that regulate insurance from preemption. The appellate court determined that while the Louisiana statute does shift the burden of innocent misrepresentations onto the insurer, it does not spread among policyholders the risk of insurance coverage for which the parties contracted under the two-pronged test established in *Metropolitan Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 105 S.Ct. 2380, 85 L.Ed.2d 728 (1985). That test, *id.* at 743–44, 105 S.Ct. at 2391, to determine whether a statute falls within the insurance savings clause requires the court first to determine whether the statute fitted the common sense definition of insurance regulation and second, to examine whether the statute met all three of the following factors: whether the statute has the effect of spreading the policyholder's risk; whether the statute is an integral part of the policy relationship between the insurer and the insured; and whether the statute is limited to entities within the insurance industry. The *Tingle* court found that the Louisiana statute did not spread the cost of health care among the policyholders and therefore it does not fall within the insurance savings clause and it is preempted by ERISA. 996 F.2d at 107–08.

5. La. R.S. 22:619(B) reads,

In any application for life or health insurance made in writing by the insured, all statements therein made by the insured shall, in the absence of fraud, be deemed representations, and not warranties. The falsity of any such statement shall not bar the right to recovery under

the contract unless such false statement was made with actual intent to deceive or unless it materially affected either the acceptance of the risk or the hazard assumed by the insurer.

Texas Ins. Code Ann. Art. 21.16 (Vernon's 1981) reads,

Any provision in any contract for policy of insurance issued or contracted for in this state which provides that answers or statements made in the application for such contract or in the contract of insurance, if untrue or false, shall render the contract or policy void or voidable, shall be of no effect, and shall not constitute any defense to any suit brought upon such contract, unless it be shown upon the trial thereof that the matter or thing misrepresented was material to the risk or actually contributed to the contingency or even on which said policy became due and payable, and whether it was material and so contributed in any case shall be a question of fact to be determined by the court or jury trying such case.

6. *Quoting Pilot Life Insurance Co. v. Dedeaux*, 481 U.S. 41, 56, 107 S.Ct. 1549, 1558, 95 L.Ed.2d 39 (1987).

7. The district court described the issue before it as one of first impression as a matter of federal common law: "the effect of material misrepresentations made in good faith on an application for enrollment in a group health and accident insurance policy provided by an employer under an employee benefit formulated pursuant to ERISA." *Tingle v. Pacific Mutual Insurance Co.*, 837 F.Supp. 191, 192 (W.D.La.1993).

tent regulations of employee benefit plans. *Id.* at 193, *citing Pilot Life,* 481 U.S. 41, 46, 107 S.Ct. 1549, 1552, 95 L.Ed.2d 39 (1987). In fact, ERISA mandates that courts create a body of substantive rights to deal with disputes involving rights and obligations under ERISA-regulated plans. *Id.* A court may refer to state law for guidance but is not required to apply it. *Id.* Nor is federal common law necessarily based on the rule embraced by the majority of jurisdictions; rather the courts must focus on policy. *Id.* The district court then reasoned that the jurisdictions holding that a material representation will void an insurance policy, regardless of the good or bad faith of the applicant, is in accord with general contract law. *Id., citing* Section 164(1) of the Restatement (Second) of Contracts (1979).[8] The district court therefore concluded that, under long established, generally accepted contract principles, the only relevant inquiry is the materiality of the misrepresentation:

> From a policy standpoint ... the most logical and equitable inquiry for a fact-finder to make, once it has found that a misrepresentation was made in an insurance application, is whether this misrepresentation was material. By material is meant those instances in which the misrepresentation materially affects the insurer's risk or the hazard assumed by the insurer. Therefore, whether the misrepresentation was fraudulent or intentional, or made in good faith without the intent to deceive, should be immaterial to the fact-finder's inquiry.

837 F.Supp. at 193. Moreover, the court noted, "If insurers were precluded from voiding an insurance policy in which a material misrepresentation was made, the total cost of all premiums would go up because insurers would likely have to depend entirely on independent examinations to assess their relative risks." *Id.* The court decided that until the legislature acts, it would follow general contract principles. *Id.*

Thus, based on the holding and results in *Tingle,* argues Travelers, to avoid a policy, the insurer need prove only that the insured made a material misrepresentation that justifiably induced the issuance of the policy. *Id.* In other words, the insurer does not need to show actual intent to deceive. Travelers argues that since the Texas misrepresentation statute is very similar to, and has been interpreted consistently with, the Louisiana statute at issue in *Tingle,* the same analysis and result should follow, i.e., preemption by ERISA and application of federal common law as delineated in *Tingle.*

Travelers explains that on Wilson's request for group insurance, Wilson indicated that during the past ten years he had not "used a controlled or prohibited substance, or had, been told they had, been counseled, consulted or treated for Alcohol or Drug Abuse." He further stated that he was not currently taking any prescription medicine and that he had not incurred more than $1000.00 in medical expenses during the previous year. With documentary support, Travelers states that it learned that during the ten years preceding April 12, 1995, Wilson had used a controlled substance or had, been told he had, or had been counseled, consulted or treated for alcohol abuse. Moreover, on the application date, Wilson was taking a prescription medicine and during the year preceding April 12, 1995, Wilson had incurred more than $1000.00 in medical expenses. Travelers maintains that it is undisputed that the medical underwriting guidelines it had in effect at the time[9] would have dictated that Travelers

---

**8.** Section 164(1) reads:

> If a party's manifestation of assent is induced by either a fraudulent or material misrepresentation by the other party upon which the recipient is justified in relying, the contract is voidable by the recipient.

Thus, according to Comment (a) (1981), there are three requirements for finding misrepresentation to void a contract: (1) The misrepresentation must have been fraudulent or material; (2) the misrepresentation must have induced the recipient to make the contract; and (3) the recipi-

ent must have been justified in relying on the misrepresentation.

**9.** In her affidavit, Beth Pavelka states that under the guidelines, coverage must be denied for an applicant, as well as the entire employer group, where the applicant has been treated for drug abuse within seven years of the date of application. Attached to the affidavit is a copy of the guidelines.

The Court notes that apparently coverage was denied only to Wilson and his dependents. That

reject Wilson as an insurable risk and decline coverage under the Plan to the entire III group. Thus the misrepresentations were material and Travelers maintains that it rightfully rescinded coverage and denied his claims under ERISA.

Travelers further contends that if Plaintiff argues that the rescission was not proper because he did not read the request for group insurance before signing it, under long standing and generally accepted principles of contract law, "[a]bsent fraud or mental incompetence, a person who signs a document intentionally is bound by its contents regardless of whether or not he read the document." *Donovan v. Mercer*, 747 F.2d 304, 308 n. 4 (5th Cir.1984); *Widener v. Arco Oil & Gas Co.*, 717 F.Supp. 1211, 1215 (N.D.Tex. 1989).

Plaintiffs oppose the motion for summary judgment. First they note that III is a fiduciary and therefore has standing to sue under 29 U.S.C. § 1132, which states in relevant part, "[a]s such, participant or beneficiary may sue for the recovery of benefits, and partial benefits or a fiduciary may sue for breach of fiduciary duty." "Fiduciary" is defined under 29 U.S.C. § 1002(21)(A) as follows:

> Specifically, a person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets ... or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

Plaintiffs refer, without a citation, to a case partially styled *Coyne & Delaney*, which held that the employer was a fiduciary because he retained authority to appoint, retain and remove plan fiduciaries. Plaintiffs insist that III acts as a fiduciary because it has retained express authority to add parties to the plan, authority to approve or disapprove changes in any premiums, and authority to discontinue the plan. It also serves as a source by which Travelers may withdraw the plan if III was not otherwise denied coverage further

misrepresentations are made or fraudulent information is given.

Plaintiffs also argue the III has suffered substantial damage as a result of Travelers' actions. Specifically, because of the wrongful rescission of coverage, III has incurred expenses in the amount of $35,203.59 for medical bills of its employee Wilson. Thus, argue Plaintiffs, III has standing to bring this suit.

 Furthermore, Plaintiffs contend that questions of fact exist as to whether the rescission of coverage was "rightful" and to whether Wilson's actions were intentional. Texas law requires that the insurer plead and prove that the insured made the misrepresentation "willfully and with design to deceive or defraud." *Adams v. John Hancock Mutual Life Insurance Co.*, 797 F.Supp. 563, 567 (W.D.Tex.1992), *aff'd* 49 F.3d 728 (5th Cir.1995). For an insurer to cancel an individual health policy within two years of the date the policy was issued because of misrepresentations in the person's application, the insurer must provide proof of an insured's intent to deceive. *Union Bankers Insurance Co. v. Shelton*, 889 S.W.2d 278 (Tex.1994). Wilson not only lacked such intent, but he personally did not complete the application that was submitted to Travelers. Any misrepresentation, argue Plaintiffs, was not intentional or willful. False statements of an insured made because of negligence, mistake and/or carelessness are not sufficient to invalidate an insurance policy as a misrepresentation of a material fact. *Adams*, 797 F.Supp. at 567. Moreover, if a misrepresentation of material fact is made innocently and in good faith, it does not defeat recovery. *Id.* Furthermore, "intent to deceive or induce the issuance of an insurance policy can never be proved as a matter of law to establish the defense or misrepresentation." *Id.* at 568, *citing Cartusciello v. Allied Life Insurance Co. of Texas*, 661 S.W.2d 285, 288 (Tex. App.—Houston [1st Dist.] 1983, no writ). The plan itself states that Texas law should apply for controversies: "This plan is covered by the laws of the State of Issue." Ex. B, Bates No. A000004.

undermines its claim to standing.

In addition, Plaintiffs contend that Travelers' Exhibit B–3, Underwriting Guidelines, is only an excerpt that does not support its assertion that it would not have granted Wilson coverage under its policy guidelines. They insist that any "unexplained gaps" in a movant's summary judgment evidence, if pertinent to material issues of fact, justify denial of summary judgment. Questions remain as to whether Wilson's health history would have precluded coverage, how many debit points can an applicant receive before being denied coverage, what are the debit points based upon, and with what score does an applicant begin?

In sum, Plaintiffs urge that summary judgment be denied because III is a fiduciary, because Travelers has not pleaded and proved that Wilson's misrepresentation was made willfully and with the intent to deceive or defraud Travelers, and because there is an issue as to whether Travelers would have denied coverage because Wilson was an "uninsurable risk."

■ Travelers replies that III has not shown standing under § 1132, which expressly states that an action to recover plan benefits may be brought by a participant or a beneficiary. A fiduciary under ERISA may have standing to bring an action in certain situations, but there is no provision of ERISA that allows a fiduciary to recover plan benefits. Moreover the fact that III voluntarily paid $35,203.59 of Wilson's medical bills does not confer standing on III because Wilson never assigned his rights or benefits under the plan to the employer.

■ Travelers further challenges Plaintiffs' reliance on Texas law regarding rescission of insurance coverage for misrepresentations by an applicant. In its motion for summary judgment Travelers argued that federal courts are charged with the duty of developing a body of federal common law to govern situations that arise under ERISA. The Fifth Circuit has rejected Plaintiffs' argument that state law should apply and has developed a rescission standard in ERISA cases that does not include any requirement that an insurer demonstrate that any misrepresentation was intentional or willful. *Tin-*

*gle,* 996 F.2d at 107. Therefore Travelers is entitled to summary judgment.

Regarding Plaintiffs' claim that Travelers' failed to show that Plaintiff's misrepresentations were material and that there are unexplained gaps preventing summary judgment, Travelers points out that the affidavit of Beth Pavelka clearly indicates that Wilson's application misrepresentations were material. As for Plaintiffs' questions about debits in Travelers' underwriting system, Travelers is not required by law to explain in detail every aspect of its underwriting protocol. Rather, the law only requires, and Travelers has complied with that requirement, that Travelers demonstrate facts entitling it to summary judgment. Plaintiffs have had ample opportunity during discovery to ask any questions they had regarding Travelers' underwriting and rescission guidelines.

After reviewing the record and the applicable law, the Court concludes that III does not have standing to sue for recovery of denied benefits or for breach of fiduciary duty related to that decision to deny Wilson benefits and rescind his coverage. Therefore III should be dismissed from this case.

■ This Court further agrees with Travelers that under the Fifth Circuit's ruling in *Tingle,* federal common law applies to this action to determine whether Travelers' rescission of Wilson's coverage was proper. *See also Coots v. United Employers Federation,* 865 F.Supp. 596, 602–03 (E.D.Mo.1994), *citing Royal American Mgrs. v. Intern. Surplus Lines,* 760 F.Supp. 788, 792 (W.D.Mo. 1991). What that federal common law is, however, is less clear because so little has been developed. Nevertheless, the courts are charged with developing a body of law regulating ERISA plans.

■ Although this Court is not bound by the *Tingle* district court's decision on remand to apply, as federal law, general contract principles establishing that intent to deceive or defraud is not necessary to authorize rescission based on misrepresentation, the Court finds the *Tingle* district court's reasoning persuasive. The need for an objective standard and for consistency and uniformity in judicial decisions nationally is a principal goal of ERISA.

Furthermore, the clear, unambiguous language of the contract, here, binds Wilson, too. The final paragraph of the request for coverage expressly states,

> I hereby represent and agree that all answers and statements in all pages of the Request for Group Insurance and any supplemental statements are full, complete and true, to the best of knowledge and belief and understand that said answers and statements form the basis upon which Insurance will be made effective. I understand that omissions, misrepresentations or misstatements about medical history could result in the denial of an otherwise valid claim and voiding or reformation of Insurance.

Wilson has not denied that he was treated for substance abuse within the two-year period of application, that he was taking prescription medication at the time, or that he had incurred at least $1,000.00 in the previous year. *See Espinosa v. Guardian Life Ins.*, 856 F.Supp. 711, 716 (D.Mass.1994).

 Despite Wilson's contention that he did not read the application form and that someone else partially filled it out, under established contract principles, a party who executes a contract by signing his name is bound by the substance of the agreement. As noted in both *American Jurisprudence* and *Corpus Juris Secundum*, with substantial authority cited,[10] "To permit a party when sued on a written contract, to admit that he signed it but to deny that it expresses the agreement he made or allow him to admit that he signed it but did not read it or know its stipulations would absolutely destroy the value of all contracts." 12 Am.Jur. 629. "In this connection it has been said that one is under a duty to learn the contents of a written contract before he signs it, and that if, without being the victim of fraud, he fails to read the contract or otherwise learn its contents, he signs the same at this peril, and is estopped to deny his obligation, will be conclusively presumed to know the contents of the contracts, and must suffer the consequences of his own negligence." 17 C.J.S.,

Contracts, 137, pp. 489–490. The United States Supreme Court has stated, "It will not do for a man to enter into a contract, and, when called upon to respond to its obligations, to say that he did not read it when he signed it, or did not know what it contained. If this were permitted, contracts would not be worth the paper on which they are written. But such is not the law." *Upton v. Tribilcock*, 91 U.S. 45, 23 L.Ed. 203 (1875).

 Moreover, this Court cannot agree that Wilson's treatment at an abuse clinic for substance abuse with methadone during 1993–94 is not material to an insurer's determination whether it will assume the risk of coverage.

Accordingly, the Court

ORDERS the following:

(1) Plaintiffs' motion for leave to amend is GRANTED;

(2) Travelers' motion for summary judgment is GRANTED; and

(3) All other motions are moot.

---

**10.** These authorities are quoted in *Reynolds v. Massachusetts Cas. Ins. Co.,*, 900 F.Supp. 915, 925 (E.D.Tenn.1995).