**ENGLISH v. MATTSON.**

**No. 14724.**

United States Court of Appeals
Fifth Circuit.

June 30, 1954.

Rehearing Denied Aug. 5, 1954.

Bernard A. Golding, Houston, Tex., for appellant.

Charles M. Haden, Fulbright, Crooker, Freeman, Bates & Jaworski, Houston, Tex., for appellee.

Before STRUM and RIVES, Circuit Judges, and DAWKINS, District Judge.

DAWKINS, District Judge.

Appellee, an automobile dealer in Lonoke, Arkansas, on July 31, 1951, sold eight automobiles to one Martin of Houston, Texas. After investigating his financial standing, Mattson, appellee, gave Martin title papers to the cars, some made out, at the request of Martin, to English Motor Sales Co., the name under which appellant did business. The address given by Martin later turned out to be that of English in Houston, Texas. Martin's check given to Mattson for the cars was dishonored by the bank on which it was drawn.

Martin took the cars immediately to the English automobile lot in Houston and without delay transferred them to English through an employee of the latter. With equal haste, this employee encumbered them in what is known as a pool or "floor-plan" to a finance company with whom English regularly did business.

Appellee brought this action charging Martin and English with conspiracy to defraud him of the automobiles by making it appear that English was an innocent purchaser by having Martin disappear. The demand was for $50,000.00, including exemplary damages.

Martin testified for English, but made no further appearance, and judgment went against him by default. English made a general denial and claimed to be a purchaser in good faith.

The chief witnesses were Mattson for himself and Martin and English for appellant. Mattson swore he telephoned the bank on which the check or draft was drawn, as he did English and at the latter's suggestion, the finance company with which English did business. He testified further that when the check was dishonored, he went to Houston and confronted English with the fact; that English first refused to do anything about it, but later offered to pay $10,000.00 to settle the whole affair.

English testified he had paid Martin for the cars by cashing a check at the bank and giving Martin cash. But an official of the bank on which it was drawn testified the check was cashed in Houston during business hours on August 4, Saturday (the cars having been sold in Arkansas on July 31). Records of the telephone company showed that Martin had placed a collect long-distance call to English from Kilgore, Texas, at 9:18 A.M. on that date.

Several corroborating witnesses testified for each litigant, and among those called by appellee was James Haywood, an ex-convict, who was again incarcerated at the time he testified. Haywood swore he knew English, Martin and one W. C. Massey, and that in the summer of 1951 he had heard those three individuals plan the fraudulent acquisition of automobiles in Arkansas. The plan was very similar to what took place in this instance. Haywood further testified, over objection of appellant, that he had known of a similar scheme by English and one Massey to obtain poultry and feed fraudulently. The place of the "poultry swindle" operation was allegedly English's farm near Houston, run by Massey, and took place in September, 1951, little more than a month after the automobile deal; that he had worked for English and that his duties included several deliveries of money to both Martin and Massey in old Mexico and New Mexico, where they were separately in hiding. He also stated that later he had been employed by English to kill Massey, and that he had committed the offenses for which he was then being held for the purpose of being confined in the same jail with Massey.

Appellee subsequently produced the testimony of several alleged victims of the "poultry swindle", each of whom outlined activities similar to the scheme alleged by appellee, and some of whom associated English with Massey's operations. All testimony on the "poultry swindle" (including Haywood's) was admitted for the limited purpose of corroboration and to show English's inclination to promote or participate in such fraudulent schemes.

The jury returned a verdict in favor of appellee for the actual value of the automobiles and for $30,000.00 exemplary damages. A motion for new trial was timely filed, but overruled on condition appellee enter a remittitur of $20,000.00, which was done, and judgment was entered for appellee accordingly. This appeal, by English only, is from the refusal to order a new trial.

Among the grounds set forth in the motion was the allegation of newly discovered evidence—that the witness Haywood was an inmate of a penitentiary throughout 1951, and was so incarcerated during the time he had claimed to have overheard the conspiracy between English, Martin and Massey as well as when he claimed to have delivered payments from English to the other two. An affidavit of the custodian of penitentiary records was attached to the motion, to the effect that Haywood was incarcerated from December, 1949, through August, 1952. Appellees filed a counter-affidavit executed by Haywood's father to the effect that Haywood was granted a mercy leave in the latter part of June, 1951, extending through the latter part of September, 1951, and that he visited the affiant on three occasions during that time.

When the motion came on for hearing oral testimony was allowed by the court. Haywood himself testified, recanting a portion of his previous testimony. His testimony on the motion was vague, and he declined to answer questions seeking to elicit an explanation of his reasons for giving the previous testimony and his contradictory statements at the hearing. He did state that he had never known English, Martin or Massey and had never worked for English. He intimated a belief that if he had refused to testify as he did at the original trial, he would have been indicted as an habitual criminal on the charge under which he was being held at the time of the trial. He refused to give full explanation as to the source of the information given in detail in his testimony at the trial of this case, although he vaguely implied that it was furnished by counsel for appellee.

Appellee then called several witnesses who testified convincingly that Haywood had not been furnished the information or induced to testify as he did by either appellee or his counsel. One witness testified that shortly before the hearing on the motion for new trial Haywood had made a statement to the effect that he had been paid by English to change

his testimony. The problem thus presented to the trial court is the real question before us.

It has been uniformly held that according to Rule 59 of Civil Procedure, 28 U.S.C.A., a motion for new trial is addressed to the sound discretion of the trial judge, and will not be disturbed except for a clear abuse of that discretion. Such a motion grounded upon newly discovered evidence will not be granted unless (1) the facts discovered are of such a nature that they would probably change the outcome; (2) the facts alleged are actually newly discovered and could not have been discovered earlier by proper diligence; and (3) the facts are not merely cumulative or impeaching.[1]

In his well-considered opinion the trial judge expressed considerable doubt as to the diligence of appellant's counsel but did not specifically pass upon the point. He stated that he was unable to arrive at any intelligent view of Haywood's testimony, either on the trial or at the hearing; but held that the new evidence—that Haywood was in the penitentiary during 1951—was merely for impeachment and would not change the result. We are in full accord with the trial court's view.

Even if all the testimony entered at the hearing on the motion had been presented to the jury at the trial, the jury could still have chosen to believe Haywood's original testimony. As the trial judge pointed out in his opinion, Haywood's testimony was impeached considerably during the trial. He was not the principal witness for appellee, although his testimony was the only direct evidence of conspiracy. There is other strong evidence in the record to support the verdict against appellant.[2]

Appellant argues that the "false" testimony of Haywood formed the foundation for all subsequent proof involving English in the "poultry swindle", and that the evidence as to this later alleged swindle must have had considerable weight with the jury. This being true, he argues, this Court should order a new trial to give him an opportunity to be judged on the basis of true testimony. Such an argument presupposes that Haywood's original testimony was completely false, that his was the only corroborating evidence *and* that the events as to which he testified actually never occurred. The additional evidence supporting the motion falls far short of proving that premise; it only relates to the *credibility* of Haywood's testimony. When considered in this light, the argument must fail.[3]

There being no clear abuse of discretion, the judgment of the trial court is

Affirmed.

1. Rule 61, Fed.Rules Civil Procedure; Brown v. Schwartz, 5 Cir., 164 F.2d 151; Crow v. Dumke, 10 Cir., 142 F.2d 635; United States v. Bransen, 9 Cir., 142 F. 2d 232.

2. See authorities cited in Footnote 1, and Rogers v. United States Lines, 3 Cir., 205 F.2d 57; International Bureau, Inc., v. Bethlehem Steel Co., 2 Cir., 192 F. 2d 304; Gordon v. United States, 6 Cir., 178 F.2d 896; Hunter v. Thomas, 10 Cir., 173 F.2d 810; Tracy v. Terminal R. Ass'n, 8 Cir., 170 F.2d 635; Pasotex Pipe Line Co. v. Murray, 5 Cir., 168 F. 2d 661; F. W. Woolworth Co. v. Seckinger, 5 Cir., 125 F.2d 97.

3. "It certainly cannot be said as a matter of law that a new trial ought to be granted whenever an affidavit is made that testimony used against the losing party at the trial * * * was perjured, for the mischief of endless litigation would far outweigh any advantage which would be gained thereby. * * * And testimony of self-confessed perjurers is naturally regarded with suspicion and distrust". Glade v. Allied Electric Products, Inc., 7 Cir., 135 F.2d 590, 591. See also Chambers v. Anderson, 6 Cir., 58 F. 2d 151.