Richard **TOOPS** and Eloisa Toops, Individually and as Surviving Parents of Jeremy Brian Toops, Deceased, Larry D. Hurst, as Administrator of the Estate of Jeremy Brian Toops, Deceased, and Thomas William Holm

v.

UNITED STATES FIDELITY AND GUARANTY COMPANY, Technical Risks, Inc., A/K/A Technical Risks Corporate Ins., Gulf Coast Marine, Inc., and Stonewall Surplus Lines Insurance Company.

UNITED STATES FIDELITY AND GUARANTY COMPANY

v.

Richard **TOOPS** and Eloisa Toops, Individually and as Next Friend of Jeremy Brian Toops, Larry D. Hurst, as Administrator of the Estate of Jeremy Brian Toops, Deceased and Thomas Holm, Individually and as Assignees of Rig Runner Express, Inc., Rig Runner Express, Inc., of Texas, and Eric Allen Davidson.

Civ. A. Nos. G–94–503, H–94–2418.

United States District Court, S.D. Texas, Galveston Division.

Nov. 18, 1994.

Order Granting in Part and Denying in Part Motion for New Trial or to Amend Judgment Jan. 5, 1995.

Alton C. Todd, Todd & Hagood, Alvin, TX, for Richard NMI Toops, Eloisa NMI Toops, Larry D. Hurst, Thomas William Holm.

F. William Mahley, Griggs & Harrison, Houston, TX, for Gulf Coast Marine, Inc.

Wilton F. Chalker, Chalker Bair & Associates, Houston, TX, for Stonewall Surplus Lines Ins. Co.

Carol S. Butner, Fulbright & Jaworski, Scott David Lassetter, Weil Gotshal & Mang-

es, Houston, TX, for U.S. Fidelity and Guar. Co.

William B. Underwood, III, LeBoeuf & Wittenmyer, Houston, TX, for Technical Risks Corporate Ins.

### ORDER ON CROSS–MOTIONS FOR SUMMARY JUDGMENT

KENT, District Judge.

The above-captioned cases involve a breach of contract claim and Declaratory Judgment Act claims seeking to declare the rights and obligations of various insurance underwriters and agents to indemnify Richard and Eloisa Toops ("Toops"), Larry Hurst ("Hurst"), and Thomas Holm ("Holm") for a $12,020,231.76 judgment entered in their favor in a previous state-court personal injury suit. Cause number G–94–503 was originally filed in the 149th Judicial District Court in Brazoria County on June 21, 1994, and was later removed to this Court by Defendants United States Fidelity and Guaranty Company ("USF & G"), Gulf Coast Marine, Inc. ("Gulf Coast Marine"), and Stonewall Surplus Lines Insurance Company ("Stonewall"). Cause number H–94–2418 was filed in the United States District Court for the Southern District of Texas, Houston Division, on July 15, 1994. By an earlier Order in G–94–503, this Court denied a Motion to Consolidate these cases, but subsequent to that ruling, the Houston Division transferred H–94–2418 to this Court, which was pleased to accept the case in the interest of bringing finality to this matter. Under its plenary powers under Rule 42(a) of the Federal Rules of Civil Procedure, the Court hereby consolidates these two causes of action.[1] Before the Court now are cross-motions for summary judgment. For reasons explained below, the Court finds that in G–94–503, Defendants Technical Risks, Inc.'s and Technical Risks, Inc. a/k/a Technical Risks Corporate Insurance's Motion for Summary Judgment is **GRANTED**; Defendant Stonewall's Motion for Summary Judgment is **GRANTED**; Defendant Gulf Coast Marine's Motion for Sum-

---

1. Although these cases are now consolidated, the Court will refer to them in this Order under their original Civil Action Numbers for the sake of clarity and accuracy in tracking the multiple pending motions in these cases.

mary Judgment is **GRANTED;** Defendant USF & G's Motion for Summary Judgment is **DENIED;** Plaintiffs' Motion for Summary Judgment is **GRANTED;** and in H–94–2418, Plaintiff USF & G's Motion for Summary Judgment is **DENIED.**

### 1. Factual Background

On August 28, 1990, Jeremy Brian Toops was riding in a car that was being towed along Highway 288 in Brazoria County by another vehicle operated by Thomas Holm. While the Toops car was travelling along the highway, it was struck from the rear by a rig operated by Eric Allen Davidson, an employee of Rig Runner Express ("Rig Runner"). Rig Runner had been hired by Dayton–Scott, a company that had leased a Model 4100W crawler crane to Union Carbide and had hired Rig Runner to transport the crane from Sulphur, Louisiana to Seadrift, Texas. Toops suffered severe injuries and burns in the accident, and he later died as a result of those injuries.

A personal-injury suit entitled *Richard Toops and Eloisa Toops, as Next Friends for Jeremy Brian Toops v. Rig Runner Express, Inc. et al.,* No 90M2036, was brought in the 149th Judicial District Court of Brazoria County, Texas. The jury in that case found that Dayton–Scott was not engaged in a joint venture or an agency relationship with Rig Runner, and it entered a take-nothing judgment against Dayton–Scott. The jury also found, however, that Rig Runner and Eric Davidson had acted negligently in the underlying accident, and the jury determined that these parties owed $12,020,231.76 in damages to the Plaintiffs in the state suit.

During the litigation in state court, attorneys for Defendants Rig Runner and Davidson demanded that certain insurance carriers providing insurance to the named insured, Dayton–Scott, provide coverage to them as well. Demand was made to the attorney for Defendant Dayton–Scott and to the relevant insurance carriers, including USF & G, that those insurance carriers defend Rig Runner and Davidson and pay any judgment that

might be rendered against them up to the limit of the insurance policies involved. (See Plaintiff's Motion for Summary Judgment, Exhibit N). The insurance companies disputed their alleged obligations to defend Rig Runner or to pay any judgment against them.

After an Amended Final Judgment was entered in state court in February of 1993, Davidson and Rig Runner completed an assignment, in which they assigned and conveyed to the Plaintiffs in this suit all causes of action which they had in contract or in tort against the named Defendants in the current litigation captioned G–94–503. As a result, Plaintiffs in that cause of action brought suit in the 149th Judicial District Court of Brazoria County, Texas, claiming breach of contract and seeking a declaratory judgment of their rights under the Texas Declaratory Judgment Act.[2] Defendants then filed a Declaratory Judgment Act suit in United States District Court for the Southern District of Texas, Houston Division, pursuant to 28 U.S.C. §§ 2201 & 2202. As stated above, that suit was later transferred to the Galveston Division, and the Court now consolidates the two cases for the purpose of this Order.

### 2. Standard for Summary Judgment

 Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56. A fact is material if its resolution in favor of one party might affect the outcome of the suit under governing law. *Anderson v. Liberty Lobby,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A genuine issue of material fact exists if there is a genuine issue for trial that must be decided by the trier of fact. In other words, summary judgment should not be granted if the evidence indicates that a reasonable fact-finder could find in favor of the nonmoving party. *Id.* See also *Matsushita Elec. Indus. Co. v. Zenith Radio,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

---

**2.** Texas Civil Practice and Remedies Code, Chapter 37, §§ 37.001 *et seq.* (Vernons, 1986). Because this case was later removed to this Court,

Plaintiffs' Declaratory Judgment Act claim is now properly asserted under 28 U.S.C. §§ 2201 and 2202.

■ In ruling on a Motion for Summary Judgment, the Court must accept the evidence of the nonmoving party and draw all justifiable inferences in his favor. Credibility determinations, weighing of the evidence, and the drawing of reasonable inferences are left to the trier of fact. *Anderson v. Liberty Lobby, supra*, 477 U.S. at 255, 106 S.Ct. at 2513.

Under Fed.R.Civ.P. 56(c), the moving party bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Once this burden is met, the burden shifts to the nonmoving party to establish the existence of a genuine issue for trial. *Matsushita, supra*, 475 U.S. at 585–87, 106 S.Ct. at 1355–56; *Leonard v. Dixie Well Serv. & Supply, Inc.*, 828 F.2d 291, 294 (5th Cir.1987).

Where the moving party has met its Rule 56(c) burden, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts.... [T]he nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.' Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no *genuine issue* for trial." *Matsushita, supra, 475 U.S. at 586–87, 106 S.Ct. at 1356 (quoting Fed.R.Civ.P. 56(e)) (emphasis in original)*.

### 3. Analysis

#### 1. Defendant Technical Risks, Inc.'s Motion for Summary Judgment

■ Technical Risks, Inc. and Technical Risks, Inc. a/k/a Technical Risks Corporate Insurance (both "TRI") have filed for summary judgment, claiming that they have been joined by Toops under the mistaken belief that TRI is an insurer. TRI is, in fact, an agent, whose sole responsibility with respect to the insurance contracts involved in this suit was to assist Dayton–Scott in obtaining coverage. There is no allegation or evidence

whatsoever suggesting that TRI has misrepresented the policy or is otherwise responsible in any other capacity. Absent some allegation or evidence that an insurance agent did something to contribute to the lack of coverage or denial by an insurer, an agent will not be liable simply because it exists as an agent. *McLaren v. Imperial Casualty and Indemnity Co.*, 767 F.Supp. 1364 (N.D.Tex.1991), *aff'd*, 968 F.2d 17 (5th Cir. 1992), *cert. denied*, — U.S. —, 113 S.Ct. 1269, 122 L.Ed.2d 665 (1993). Because Plaintiffs have presented no evidence as to TRI's liability in this case, TRI's Motion for Summary Judgment is **GRANTED,** and all claims against TRI in this case are **DISMISSED WITH PREJUDICE.**

#### 2. Defendant Stonewall's Motion for Summary Judgment

■ Defendant Stonewall issued an Excess Umbrella Liability Policy, No. 58006700, to Dayton–Scott on August 13, 1990. This excess insurance policy included a liability limit of $5,000,000 *in excess* of both the $19,-000,000 in underlying excess policies issued by Lloyds Underwriters and the $1,000,000 primary liability policy issued to Dayton–Scott.[3] (See Stonewall's Motion for Summary Judgment, Instrument # 29, at 2).

The undisputed evidence in this case shows that Stonewall would be liable to Dayton–Scott only after the underlying umbrella insurers have either paid or been held liable to pay the full amount of their respective net-loss liability. (See id. at 3). In addition, Stonewall's policy included the following clause:

2. Maintenance of Underlying Umbrella Insurance

Further, the receivership, insolvency, and/or inability to pay by an underlying insurer shall not increase or extend the liability of the company (Stonewall) under this policy and [sic] coverage hereunder shall *only apply in excess* of the applicable limit of liability stated in the Schedule of Underlying Limits, *whether or not available to the insured.* (emphasis added)

---

**3.** The Lloyds Underwriters' policy numbers are: RA024860J, RA028460J, and RA027380J.

By its own terms, Stonewall's policy is triggered *only* when a claim in excess of $20,000,000 has been made. In this case, however, the state-court jury awarded Plaintiffs $12,020,231.76, far less than the $20,000,000 in underlying claims necessary to trigger Stonewall's liability. Stonewall points out that the Plaintiffs have not sued Lloyds Underwriters, which issued the three underlying Excess Umbrella Policies that would have to be triggered before Stonewall would become liable.

In response, the Plaintiffs claim that the Stonewall limit has been invoked in this case because in their original pleadings, Plaintiffs made a claim for "a sum within the jurisdictional limits of the Court." (See Plaintiffs' Response to Defendants' Motions for Summary Judgment, Instrument #40, at 10). The Court finds this argument to be utterly without merit on its face. Obviously, Plaintiffs could not claim *more* under the insurance contracts than the jury awarded in the state-court suit, and the fact that Plaintiffs also made claims in the Original Petition for attorneys' fees is irrelevant; even if such fees were awarded, it is inconceivable to this Court that even the most imaginative Plaintiff could seriously entertain hopes of obtaining nearly $8,000,000 in attorney's fees in a case such as the one currently before the Court. For these reasons, the Court finds that Defendant Stonewall has born its summary judgment burden, and its Motion for Summary Judgment is **GRANTED**. Consequently, all claims in this matter against Stonewall are hereby **DISMISSED WITH PREJUDICE**.

*3. Defendant Gulf Coast Marine's Motion for Summary Judgment*

■ Gulf Coast Marine has also asked this Court to grant it summary judgment in this matter, claiming that the Certificate of Insurance issued by it to Dayton–Scott shows as a matter of law that it was acting as an agent of the underwriter and not as the assurer. The Court agrees. The insurance contract in dispute is an Excess Umbrella Policy (No. 14147) that is prior to Defendant Stonewall's; it provides that $5,000,000 net liability will be owed only when $15,000,000 in previous liability has already been claimed.

The first page of the insurance contract makes explicitly clear that Gulf Coast Marine is *not* the underwriter. The contract states that it is issued "[i]n accordance with authorization granted to GULF COAST MARINE, INC. by certain admitted and/or unadmitted insurers (hereinafter called the Underwriters) whose names and the proportions underwritten by them are or will be on file in the office of GULF COAST MARINE, INC." (Gulf Coast Marine's Motion for Summary Judgment, Instrument #33, Exhibit A).

The first paragraph of the contract also explicitly states that Gulf Coast Marine has no liability under the contract:

> It is expressly understood and agreed by the Assured by accepting this instrument that GULF COAST MARINE, INC. is not one of the Underwriters or Assurers hereunder and neither is nor shall be in any way or to any extent liable for any loss or claim whatever as insurers, but the Assurers hereunder are only those Underwriters whose names are on file as hereinabove set forth.

By the very terms of the contract, only the assurer—Ocean Marine Indemnity Company—is liable under the policy in question. The fact that an agent is not personally liable under contracts made on behalf of its principal (if acting within the scope of the agent's authority) is a principle of Texas law too well-established to need elaboration. *See Haines v. National Union Fire Ins. Co.*, 812 F.Supp. 93, 96 (S.D.Tex.1993). No evidence has been presented in this case to suggest that Gulf Coast Marine acted outside the scope of its authority or in any way misrepresented the contract to Dayton–Scott. Therefore, the Court finds that, as a matter of law, Gulf Coast Marine is not liable to the Plaintiffs under Policy No. 14147, and Gulf Coast Marine's Motion for Summary Judgment is **GRANTED**. Thus, all claims made against Gulf Coast Marine are **DISMISSED WITH PREJUDICE**.

*4. Plaintiff Toops' and Defendant USF & G's Cross–Motions for Summary Judgment*

■ Plaintiffs argue that summary judgment should be entered for their claim

against USF & G on the grounds that the primary insurance policy issued by USF & G to Dayton–Scott (No. 1TB 13026514600) also covers Rig Runner and that, by assignment, Plaintiffs are entitled to receive all benefits that Rig Runner could have obtained from USF & G. USF & G counters in its own Motion for Summary Judgment that Rig Runner was *not* an insured under its policy covering Dayton–Scott and that Plaintiffs are prohibited from litigating the present suit because of res judicata and collateral estoppel.

The Court first addresses USF & G's assertion that the state-court jury's finding that Rig Runner was not involved in an agency relationship or a joint venture with Dayton–Scott precludes the instant case. (See USF & G's Motion for Summary Judgment, Instrument # 26, at 3). USF & G's claim is utterly without merit, and the Court admits that it is at a loss to understand how such a claim could be credibly raised based on Plaintiffs' Original Complaint. It is patently obvious in this case that Plaintiffs do *not* rely on either an agency or a joint venture theory to argue this case. Indeed, Plaintiffs' Motion for Summary Judgment *never* raises any such claim but relies instead on a direct interpretation of the insurance contract in question. Whether or not Rig Runner is found to be an insured under USF & G's policy with Dayton–Scott is a wholly independent issue from the question of whether Rig Runner was involved in an agency or joint venture relationship with Dayton–Scott. As Plaintiffs point out, "at no time during [the prior state-court trial] was the question of liability coverage concerning Rig Runner under the policies of insurance for Dayton–Scott of USF & G or the other defendants in this lawsuit litigated." (Plaintiffs' Motion for Summary Judgment, Instrument # 27, at 8). Thus, the Court finds that USF & G's argument that Plaintiffs are barred from litigating this matter because of res judicata or collateral estoppel is groundless.

However, the parties in this case present a more difficult issue to this Court by arguing over the proper interpretation of the coverage defined within USF & G's policy to Dayton–Scott. Section II(A)(1) reads:

1. WHO IS AN INSURED

The following are insureds:

a. You for any covered auto.

b. Anyone else while using with your permission a covered auto you own, hire or borrow except:

(1) The owner of a covered auto you hire or borrow from one of your employees or a member of his or her household.

(2) Someone using a covered auto while he or she is working in a business of selling, servicing, repairing or parking autos unless that business is yours.

(3) Anyone other than your employees, partners, a lessee or borrower or any of their employees, while moving property to or from a covered auto.

(4) A partner of yours for a covered auto owned by him or her or a member of his or her household.

c. Anyone liable for the conduct of an insured specified above but only to the extent of that liability. However, the owner or anyone else from whom you hire or borrow a covered auto is an insured only if that auto is a trailer connected to a covered auto you own.

The dispute in this case centers on the relation of the exclusion found in subsection (c) to the coverage provided in subsection (b). Plaintiffs argue that subsections (b) and (c) provide independent definitions of who is an "insured" and that the exclusion found in subsection (c) is, therefore, inapplicable to parties covered by subsection (b). By contrast, USF & G claims that the exclusion found in subsection (c) also applies to any party covered under subsection (b). For the reasons discussed below, the Court finds that Plaintiffs' reading of these clauses is correct.

First, it is obvious that Section II(A)(1) intends to define "who is an insured." In doing so, this section clearly and plainly intends to define three *separate* categories of "insureds" by the individual subsections (a), (b), and (c) listed after the sentence, "The following are insureds." Most critically, two of these subsections, (b) and (c), each have their own exclusions. By inference,

each exclusion can *only* apply to the section in which it occurs, and it does not extend to prior or subsequent definitions of who is an insured.

USF & G argues that the exclusion found in subsection (c) excludes Rig Runner from coverage because, as the "owner" of a hired vehicle covered by the policy, Rig Runner is covered only "if that auto is a trailer connected to a covered auto you [Dayton–Scott] own." Because the vehicle in question was obviously not a trailer, USF & G contends that the Court must find as a matter of law that Rig Runner is not covered by these definition of who is an insured.

■ The Court finds this construction wholly unconvincing. USF & G fails to point out that subsection (b) *also* excludes "owners"; sub-subsection (b)(1) explicitly excludes the owners of covered vehicles hired from a Dayton–Scott employee or members of the employee's household. The Court finds it nonsensical to exclude one class of "owners" in subsection (b) and another class in subsection (c) if the one found in (c) is, in fact, intended to exclude a set of "owners" otherwise *included* in subsection (b). As stated above, subsections (a), (b), and (c) each provide independent grounds of coverage, and the exclusions attached to each subsection must relate to that subsection alone. Indeed, had USF & G intended the exclusion of subsection (c) to apply to those covered under subsection (b), it could easily have attached a fifth exclusion to (b) that would have accomplished this purpose. It is a fundamental principle of insurance law that "an intent to exclude coverage must be expressed in clear and unambiguous language." *National Union Fire Ins. Co. of Pittsburgh v. Hudson Energy Co., Inc.*, 811 S.W.2d 552, 555 (Tex.1991). The fact that no such exclusion is found in (b) suggests to this Court that none was intended.[4]

With this construction of Section II(A)(1) in mind, the Court determines that Rig Runner is an insured party under II(A)(1)(b). First, it is clear that Rig Runner was "hired" by Dayton–Scott. The Court is guided in this matter by several common definitions of the term "hire." *Black's Law Dictionary* defines the term as "to arrange for the labor or services of another for a stipulated compensation." *Black's Law Dictionary* 729 (6th ed. 1990). Similarly, the Texas Supreme Court, which defines the applicable law in this case of contract interpretation, has stated that "[t]o 'hire' means to procure." *State v. Houdaille Industries, Inc.*, 632 S.W.2d 723, 730 (Tex.1982).

It is undisputed in this case that Dayton–Scott took bids from different shippers and came to an agreement regarding the transfer of the equipment involved in this case. No quotations regarding the price for securing Rig Runner's services were conveyed to Un-

---

4. This Court is, of course, aware that one Texas state court has stated that the general rule that ambiguous language in an insurance policy is to be construed against the insurer applies only *after* the insured in question has been determined to belong to the class of insured parties. *McBroome–Bennett Plumbing, Inc. v. Villa France, Inc.*, 515 S.W.2d 32, 36 (Civ.App.Ct.—Dallas, 1974, n.w.h.). In the instant case, however, the Court does not find the contract to be ambiguous, and the *McBroome–Bennett* restriction does not apply.

Nevertheless, if the Court were to find the contract ambiguous, it is not clear that *McBroome–Bennett* would *necessarily* mandate a contrary finding. It is by no means clear that the *McBroome–Bennett* doctrine has any continuing vitality in Texas. Neither the Texas Supreme Court nor any other Texas appellate court has ever endorsed this specific provision of *McBroome–Bennett*, which itself relied on *no* Texas or other case authority for its pronouncement. Instead, it pointed to recent statements of then-President Gerald Ford and a comment in 44 C.J.S. Insurance § 308, at 1226 (1945), itself almost twenty years old at the time.

The Court has searched state-court opinions issued during the past twenty years to determine the vitality of the *McBroome–Bennett* doctrine in other states. The results of that search suggest that only a few states—particularly New Mexico—have explicitly adopted such a result. *See e.g., Atlas Assurance Co., Inc. v. General Builders, Inc.*, 93 N.M. 398, 600 P.2d 850 (App.Ct.—New Mexico, 1979). Significantly, one of the leading statements of American law cites *only McBroome–Bennett* for the proposition stated above. 43 Am.Jr.2d, *Insurance* § 285 (1982 and 1994 Supp.). Finally, in a recent discussion of this issue, a Missouri state court questioned the binding authority of the *McBroome–Bennett* doctrine in that state, noting that the one Missouri opinion discussing a similar issue was able to cite no case authority for its position. *Hayes v. American Standard Insurance Co.*, 847 S.W.2d 150, 153 (App.Ct.—Missouri, 1993).

ion Carbide prior to or immediately after the job was awarded to Rig Runner. (Plaintiffs' Motion for Summary Judgment, at 18–20). In fact, Mr. Hassan, the President of Rig Runner, testified that at all times, Rig Runner considered its customer to be solely Dayton–Scott. (Id. at 24). Finally, Dayton–Scott admitted in the state-court negligence trial that "Rig Runner is the transportation company that we hired to move it [the equipment] down there for us." (Id. at 25; see also id. at 25–26). Based on this evidence, the Court finds that Plaintiff has shown as a matter of law that Dayton–Scott "hired" Rig Runner to transport equipment from Louisiana to Texas.

With this conclusion in mind, the Court reads the remaining provisions of II(A)(1)(b) as follows:

"Anyone else" (Rig Runner is not Dayton–Scott, as concluded by the jury's finding that no agency or joint venture relation existed between the parties)

"while using with your" (Dayton–Scott's)

"permission" (express and implied permission were given here via the employment relationship) .

"a covered auto" (the rig involved in the accident)

"you" (Dayton–Scott)

"own, hire, or borrow" (Dayton–Scott hired Rig Runner).

The Court finds the provisions of II(A)(1)(b) to be unambiguous on their face, and consequently, there is no need to resort to rules of construction to interpret this language. *See Adams v. John Hancock Mutual Life Ins. Co.,* 797 F.Supp. 563, 566 (W.D.Tex.1992) (stating that rules of construction may not be used when an insurance contract's provisions are expressed in clear and unambiguous language); *Schnabel v. Philadelphia American Life Ins. Co.,* 795 F.Supp. 816, 822–23 (S.D.Tex.1992) ("An unambiguous contract will be construed as written.").

The Court is aware that it is fundamental to Texas insurance law that "[w]hen construing a particular provision in an insurance policy, all of the policy's provisions should be given effect, and the whole of the contract considered, with each clause being used to help interpret the other." *Decorative Center of Houston v. Employers Casualty Co.,* 833 S.W.2d 257, 260 (Tex.App.—Corpus Christi, 1992). However, even if reading subsection (c) in relation with subsection (b) renders this contract ambiguous, it is also a basic principle of insurance law that "[w]hen the language chosen in an insurance policy is susceptible of more than one construction, such policies should be construed strictly against the insurer and liberally in favor of the insured." *Adams, supra,* 797 F.Supp. at 567.[5] When an exclusion clause is involved, an even more stringent construction is applied against insurance companies. *Id.*

As stated above, the Court has given thorough and thoughtful attention to the clauses of the contract before it and has concluded that reading subsection (b) in relation to subsection (c) does not create such a conflict in this case that the contract must be seen as ambiguous. Moreover, if USF & G had intended subsection (c) to limit subsection (b), it could easily have included the final exclusion as a fifth exclusionary clause within subsection (b). By arguing that the contract clearly favors itself, USF & G apparently asks this Court to allow it to write contract provisions that manifestly fail to state restrictions that could easily have been specified, argue that exclusions exceed the subsections in which they have intentionally been placed, and then hide behind its own creation under the premise that the contact clearly favors itself. This Court declines to follow such an argument. Instead, the Court applies this contract's clearly-placed exclusionary clauses against USF & G and finds that Rig Runner is an insured under subsection (b). Thus, by assignment, Plaintiffs in this case are also entitled to the insurance protections afforded by USF & G's contract with Dayton–Scott. For these reasons, the Plaintiffs' Motion for Summary Judgment is **GRANTED** insofar as it asserts a claim against USF & G, and Defendant USF & G's Motion for Summary Judgment in G–94–503

**5.** *See supra* note 4.

is **DENIED.**[6]

### 5. USF & G's Motion for Summary Judgment in H–94–2418

Defendant USF & G filed a Motion for Summary Judgment as Plaintiff in its above-captioned Declaratory Judgment Act suit that parallels the facts and arguments set forth above in G–94–503.[7] Having already decided precisely the same issues raised by USF & G's Declaratory Judgment Act suit, the Court finds that for the reasons stated above, USF & G's Motion for Summary Judgment in this consolidated action is **DENIED.**

### 4. Conclusion

For the reasons stated above, the Court finds that Plaintiffs have demonstrated the validity of their claim against USF & G, and Plaintiffs' Motion for Summary Judgment is, therefore, **GRANTED** insofar as it states a claim against USF & G. Consequently, USF & G's Motion for Summary Judgment in both cases consolidated in this Order are **DENIED.** In addition, Defendant TRI's Motion for Summary Judgment is **GRANTED;** Defendant Stonewall's Motion for Summary Judgment is **GRANTED;** and Defendant Gulf Coast Marine's Motion for Summary Judgment is **GRANTED.** All claims asserted against Defendants TRI, Stonewall, and Gulf Coast Marine are also **DISMISSED WITH PREJUDICE.**

Furthermore, all other relief not specifically granted herein is **DENIED.** All parties are to bear their own costs. It is further **ORDERED** that the parties file no further pleadings on this issue in this Court, including motions to reconsider and the like. Instead, the parties are instructed to seek any

further relief to which they feel themselves entitled in the United States Court of Appeals for the Fifth Circuit, as may be appropriate in due course.

IT IS SO ORDERED.

### ORDER

This is a breach of contract action in which Defendant United States Fidelity and Guaranty Company ("USF & G") was held liable by this Court to the Plaintiffs for the sum of $1,000,000 plus prejudgment and postjudgment interest on that amount. Before the Court now is USF & G's Motion for New Trial and Alternate Motion to Amend the Judgment of this Court pursuant to Rule 59 of the Federal Rules of Civil Procedure. For the reasons stated below, the Court finds that Defendant's Motion is **GRANTED IN PART and DENIED IN PART.**

In its November 18, 1994 Summary Judgment Order, this Court held that Dayton–Scott, a company that had leased a Model 4100W crawler crane to Union Carbide, had hired Rig Runner Express to transport that crane from Sulphur, Louisiana to Seadrift, Texas and that, because of an ensuing accident in which Jeremy Brian Toops was killed by the Rig Runner vehicle, Rig Runner fell within the "hired auto" coverage of an insurance policy issued by USF & G to Dayton–Scott, the named insured. USF & G now appears before this Court with new counsel and argues, *inter alia,* that a line of caselaw not presented to this Court during its Summary Judgment deliberations are dispositive in USF & G's favor and that this Court should grant its Rule 59 Motion.

■ Although USF & G does not argue the point, the Court notes as a preliminary

---

**6.** Plaintiffs' Motion for Summary Judgment does not specifically mention the remaining Defendants in this case or present any evidence relevant to their liability. As the Court has already determined, the remaining Defendants in G–94–503 have all been granted summary judgment. Therefore, insofar as Plaintiffs' Motion for Summary Judgment asserts any claim against the non-USF & G Defendants, that motion is **DENIED.**

**7.** A number of outstanding motions remain unresolved in H–94–2418. This Court now finds that,

because the consolidation of the two instant cases already raises the issues Plaintiff attempts to address in its First Amended Complaint, USF & G's Motion for Leave to File a First Amended Complaint should be **GRANTED.** Secondly, for the reasons set forth above, Defendants' Motion to Dismiss and Motion for Plea in Abatement are rendered **MOOT.** Lastly, because the Court has consolidated these cases upon transfer, Plaintiff's pending Motion to Consolidate is also rendered **MOOT.**

matter that a Rule 59 Motion is appropriate to seek the reargument of a dispositive motion such as a Summary Judgment Order. *See, e.g., Gainey v. Brotherhood of Railway & Steamship Clerks, Etc.,* 303 F.2d 716, 718 (3d Cir.1962) (noting that "a motion for rehearing or reconsideration made within ten days after the entry of an appealable order is within the coverage of Rule 59"); 1 Moore's Federal Practice 605 (1995). Having filed its motion within the ten day limit required by Rule 59, USF & G's Motion is properly before this Court.

The rules in this Circuit governing the granting of a Motion for New Trial are well established. The Fifth Circuit has long held that the decision to grant a new trial is entrusted to the sound discretion of the trial Court and that its decision will not be disturbed except for abuse of discretion. *United States v. Martino,* 648 F.2d 367, 407 (5th Cir.1981), *cert. denied,* 456 U.S. 943, 102 S.Ct. 2007, 72 L.Ed.2d 465 (1982); *English v. Mattson,* 214 F.2d 406 (5th Cir.1954).

■ It is not clear, however, what the proper ground for granting Defendant's Rule 59 Motion is in this case. As mentioned above, USF & G's new counsel has presented this Court with a line of cases not argued earlier, suggesting that for a vehicle to fall within the "hired auto" clause of an insurance contract, the vehicle must be hired by a separate contract and that the named insured must exercise exclusive use or control over that vehicle. *Sprow v. Hartford Ins. Co.,* 594 F.2d 418, 422 (5th Cir.1979); *Russom v. Insurance Co. of North America,* 421 F.2d 985, 993 (6th Cir.1970). In addition, USF & G also presents caselaw for the first time that suggests that Summary Judgment was appropriate in its favor because Rig Runner was an independent contractor. *Chicago Ins. Co. v. Farm Bureau Mutual Ins. Co.,* 929 F.2d 372, 374–75 (8th Cir.1991) (applying Texas law).

Nevertheless, USF & G has not presented any authority to this Court holding that the mere assertion of a new line of caselaw not previously argued in Summary Judgment deliberations is necessarily a proper ground for granting a Rule 59 Motion. In the absence of any caselaw on this point, the Court finds that, by analogy to the well-established law governing new trials in the face of newly discovered evidence, Defendant's newly-presented argument in this case does not present a compelling reason to grant new arguments on a point already decided by the Court.

It is well-established in both the civil and criminal areas that when newly discovered evidence is presented as the ground for a new trial, the motion will not be granted unless (1) the facts discovered are of such a nature that they would probably change the outcome; (2) the facts alleged are actually newly discovered *and could not have been discovered earlier by proper diligence;* and (3) the facts are not merely cumulative or impeaching. *English,* 214 F.2d at 408. A Rule 59 Motion is properly denied where evidence was not uncovered because of the lack of due diligence on the part of the moving party. *Contempo Metal Furniture Co. v. East Texas Motor Freight Lines, Inc.,* 661 F.2d 761 (9th Cir.1981). In addition, a party may not prevail on a Rule 59 Motion on the basis of a theory not urged during the earlier proceeding. 11 Wright & Miller, Federal Practice and Procedure § 2805 at 40 (1973).

While it is clear that USF & G is *not* presenting newly discovered evidence in this case, the Defendant *is* presenting what are, for it at least, newly discovered cases. As mentioned above, USF & G has retained new counsel to represent it in this matter, and Defendant's able and highly competent new counsel has presented both the line of cases mentioned above and arguments already heard in the Summary Judgment proceedings. The latter arguments are clearly irrelevant at this point; having already considered the merits of USF & G's case, the Court will not rehear the same arguments at this point.

Nevertheless, the Court takes genuine pause in the face of caselaw that presents an entirely new line of analysis from what was earlier given to the Court. Having read the cases mentioned by Defendant, the Court now believes that, if these cases had been presented at the appropriate time, the Court might have reached a different conclusion in

this matter. However, it does not necessarily follow that Defendant's Rule 59 Motion should be granted. The Court's sense of justice to the parties in this case must be balanced off against its equally pressing obligations to the hundreds of parties also waiting to be heard by this Court in its enormous caseload, which is currently one of the heaviest civil dockets in the country. All of those parties expect, and this Court intends to deliver, a timely and fair adjudication of their disputes, and this goal is virtually precluded by inherently redundant dispositive treatment of cases like this one.

The Court hastens to point out that Defendant USF & G was earlier represented in this Court by one of the largest and most able law firms in this state. As such, Defendant had its fair bite at the apple in this Court and could have presented the appropriate caselaw in the due course of research on this complex and extensively briefed case. For the Court now to rehear this matter merely because USF & G failed to present a line of cases that could just as easily have been presented two months ago as now imposes a substantial burden on the already overtaxed resources of this Court. If the Court were to allow Defendants to reargue points merely on the basis of newly-discovered caselaw, it would quickly find itself adjudicating cases in a piecemeal fashion, and over-and-over, thereby expanding its already heavy caseload into an unmanageable series of partial determinations. For these reasons, the Court finds that, despite the excellent efforts if its new counsel, USF & G is estopped from asserting its new line of cases at this point and that its Rule 59 Motion for New Trial is DENIED.

In addition, however, Defendant also asks this Court to amend its December 5, 1994 Final Judgment in order to clarify the Court's ruling on the rate of interest owed on the $1,000,000 awarded to Plaintiffs in this case. While USF & G concedes that the prevailing prejudgment interest rate on the state-court award, which formed the basis for this suit, is 10%, *Cavnar v. Quality Control Parking, Inc.*, 696 S.W.2d 549 (Tex.1985) (now modified and codified at Tex.Rev.Civ. Stat.Ann. art 5069–1.05, § 6(a)), it contends that the award of $1,000,000 in this case involves a claim for breach of contract, with prejudgment interest limited to 6% simple interest. Tex.Rev.Civ.Stat.Ann. art 5069–1.03.

Having considered Defendant's arguments, the Court finds that they are well taken. Accordingly, the Court hereby GRANTS Defendant's Rule 59 Motion to Amend its December 5, 1994, Partial Final Judgment to show prejudgment interest at 6% simple interest.

For these reasons, the Court finds that Defendant USF & G's Rule 59 Motion is **DENIED IN PART** and **GRANTED IN PART**. Any relief not specifically granted herein is **DENIED**. It is further **ORDERED** that the parties file *no* further pleadings in this Court, including motions to reconsider and the like. Instead, the parties are instructed to seek any further relief to which they feel themselves entitled in the United States Court of Appeals for the Fifth Circuit, as may be appropriate in due course.

IT IS SO ORDERED.

### *SECOND AMENDED PARTIAL FINAL JUDGMENT*

For the reasons stated by the Court in its Order entered on this date, it is hereby **ORDERED, ADJUDGED,** and **DECREED** that Plaintiffs Richard and Eloisa Toops, Individually and as Surviving Parents of Jeremy Brian Toops, Deceased, Larry D. Hurst, as Administrator of the Estate of Jeremy Brian Toops, Deceased, and Thomas William Holm, do have and recover, jointly and severally, of and from Defendant United States Fidelity and Guaranty Company the sum of $1,000,000, together with any interest which has accrued to said judgment amount, arising from the Final Judgment which was entered in Cause No. 90M2036, styled "Richard Toops v. Rig Runner Express, et al.", in the 149th Judicial Court of Brazoria County, Texas, at the statutory rate of interest of six percent (6%), together with post-judgment interest *on that entire amount,* from this date forward through the date of satisfaction of judgment, at the rate of five percent (5%),

compounded, for which let execution issue, if not timely paid.

It is further **ORDERED, ADJUDGED,** and **DECREED** that each party addressed in this Order bear his, her, or its own taxable costs and expenses incurred herein to date. Any relief not herein expressly granted is **DENIED.**

**THIS IS A FINAL JUDGMENT.**

**IT IS SO ORDERED.**