United States Court of Appeals,

Fifth Circuit.

No. 95-40017.

Richard TOOPS; Eloisa Toops, individually and as surviving parents of Jeremy Brian Toops, deceased; Larry D. Hurst, as administrator of the estate of Jeremy Brian Toops, deceased; Thomas William Holm, Plaintiffs-Appellees,

v.

GULF COAST MARINE INC.; Stonewall Surplus Lines Insurance Company; Technical Risks, Inc.; Technical Risks Corporate Insurance, Defendants,

and

United States Fidelity and Guaranty Company, Defendant-Appellant.

UNITED STATES FIDELITY AND GUARANTY COMPANY, Plaintiff-Appellant,

v.

Richard TOOPS, Individually and a/n/f of Jeremy Brian Toops; Eloisa Toops, Individually and a/n/f of Jeremy Brian Toops; Larry D. Hurst, Administrator of the Estate of Jeremy Brian Toops, Deceased; Thomas Holm, Individually and as assignees of Rig Runner Express Inc.; Rig Runner Express Inc.; Eric Allen Davidson, Defendants-Appellees.

Jan. 15, 1996.

Appeals from the United States District Court for the Southern District of Texas.

Before DAVIS and PARKER, Circuit Judges, and BUNTON[*], District Judge.

BUNTON, Senior District Judge.

FACTUAL BACKGROUND

Dayton-Scott Equipment Company is a Houston based company that rents heavy cranes to large contractors and industrial companies

---

[*]District Judge of the Western District of Texas, sitting by designation.

throughout the United States.  In 1990, Union Carbide Chemicals and Plastic Company approached Dayton-Scott to lease a ringer attachment[1] for a crane to be used on a construction project at Union Carbide's Point Comfort plant in Seadrift, Texas.

The ringer attachment was located on a construction site in Sulphur, Louisiana and needed to be transported to the Union Carbide construction site in South Texas.  Dayton-Scott solicited for transportation service from several shippers and ultimately awarded the bid to Rig Runner, a licensed intrastate and interstate common carrier.  Rig Runner in turn hired two drivers, Williams and Davidson, to transport the crane parts from Louisiana to Texas. Williams and Davidson were independent contractors who owned and operated their own trucks.

On the night of August 28, 1990, Jeremy Brian Toops ("Toops") was riding in a car towed by another car which was driven by Thomas Holm.  While Toops' car was being towed down Highway 288 near Angleton in Brazoria County, Texas, it was struck from behind by the tractor-trailer driven by Davidson.  The accident resulted in Toops suffering severe injuries and burns from which he later died.

PROCEDURAL BACKGROUND

Toops' parents filed suit in Brazoria County against, inter alia, Davidson, Rig Runner, and Dayton-Scott.  During the litigation, it became apparent to Rig Runner that its $750,000.00 insurance policy would be insufficient to cover any potential

---

[1]A ringer attachment is installed on a crane to substantially increase its lifting capacity.

liability in the Texas tort suit. Consequently, Rig Runner and Davidson demanded that Dayton-Scott's insurers, which included Appellant United States Fidelity and Guaranty Co. ("USF & G"), defend them and pay any judgment rendered against them up to policy limits. USF & G and the other insurers denied that coverage existed and refused to defend them or pay any judgment.

Two jury interrogatories were submitted to the Brazoria County jury regarding Dayton-Scott's relationship with Rig Runner. The first interrogatory asked whether Dayton-Scott and Rig Runner were engaged in a joint venture to which the jury answered "no." The second interrogatory asked whether Rig Runner and Davidson were agents of Dayton-Scott to which the jury answered "no." Dayton-Scott was not found liable, but Davidson and Rig Runner were found to be negligent and Toops was awarded $12 million in damages. Rig Runner paid its policy limits, did not appeal the decision, and in May of 1994 Davidson and Rig Runner assigned to Toops all causes of action in contract or torts that they might have against USF & G and the other insurers.

Toops once again filed in state court against USF & G and the other insurers claiming breach of contract and seeking declaratory judgment under the Texas Declaratory Judgment Act. USF & G removed the case to federal court and also filed a declaratory judgment. The District Court granted summary judgment for all of the insurers except USF & G. USF & G's motion for summary judgment was denied and Toops' motion for summary judgment was granted.

This entire appeal centers around the District Court's

interpretation of USF & G's insurance policy which states in
pertinent part:

(1) WHO IS AN INSURED

The following are insureds:

(a) You for any covered auto.

(b) Anyone else while using with your permission a
covered auto you own, hire or borrow except:

....

(c) Anyone liable for the conduct of an insured
specified above but only to the extent of that
liability. However, the owner or anyone else from
whom you hire or borrow a covered auto is an
insured only if that auto is a trailer connected to
a covered auto you own.

The District Court found that the coverage of Rig Runner was
expressed in clear and unambiguous language. The Court then found
that Dayton-Scott "hired" Rig Runner and therefore Rig Runner was
an insured under subsection (1)(b) above. The Court also rejected
USF & G's argument that subsection (1)(c) provides an exemption by
stating that the exemption was limited to subsection (c) and thus
could not be used to defeat coverage under subsection (b).

The United States District Court ultimately reduced the
principal amount of the judgment from $12 to $1 million. However,
immediately after the order on cross-motions for summary judgment
was filed, USF & G fired its counsel, retained other counsel, and
within 10 days filed a FED.R.CIV.P. 59 motion for new trial. The
District Court, in another order denied the Rule 59 motion, even
though the brief seemingly argued Fifth Circuit case law directly
on point, which may have mandated a different interpretation from

4

the one the District Court decided.  The District Court stated:

> Nevertheless, the Court takes genuine pause in the face of caselaw that presents an entirely new line of analysis from what was earlier given to the Court.  Having read the cases mentioned by Defendant, the Court now believes that, if these cases had been presented at the appropriate time, the Court might have reached a different conclusion in this matter.[2]

*Toops v. USF & G,* 871 F.Supp. 284, 294-95 (S.D.Tex.1994).  We now proceed with a review of this appeal.

DISCUSSION

I. McBroome-Bennett Doctrine

We first address whether the District Court below erred when it strictly applied the insurance policy at issue against USF & G and liberally in favor of Rig Runner.  USF & G takes issue with the fact that the District Court refused to follow the case of *McBroome-Bennett Plumbing, Inc. v. Villa France, Inc.,* 515 S.W.2d 32 (Tex.Ct.App.1974).  The *McBroome-Bennett* doctrine states that there can be no coverage presumption against an insurer until the claimant has established that it is an insured under the policy.  Although USF & G failed to argue the *McBroome-Bennett* doctrine in its summary judgment motion, the District Court nevertheless addressed the doctrine in a footnote.  The *McBroome-Bennett* doctrine is only applicable, however, when the insurance policy is found to be ambiguous.  The Court specifically found that the policy was unambiguous and therefore refused to apply it.  *Toops,* 871 F.Supp. at 292.

---

[2]Supreme Court Justice Frankfurter once said, "Wisdom too often never comes, and so one ought not to reject it merely because it comes late."  *Henslee v. Union Planters Nat'l Bank and Trust Co.,* 335 U.S. 595, 600, 69 S.Ct. 290, 293, 93 L.Ed. 259 (1949).

USF & G also argues that there was an alternative finding by the Court that *if* the policy was ambiguous, then the policy should be construed strictly against the insurer and liberally against the insured. It is arguable that this was an alternative holding by the Court; however, even if it was an alternative holding, the District Court properly excluded any analysis under the *McBroome-Bennett* doctrine. The doctrine has been drawn into question by courts both in Texas and across the nation. "Neither the Texas Supreme Court nor any other Texas appellate court has ever endorsed this specific provision of *McBroome-Bennett,* which itself relied on *no* Texas or other case authority for its pronouncement. Instead, it pointed to recent statements of then—President Gerald Ford and a comment in 44 C.J.S. Insurance ... itself almost twenty years old at the time." *Id.* at 291 n. 4. The law in the Fifth Circuit expressed in the District Court case of *Adams v. John Hancock Mutual Life Ins. Co.,* states:

> Under Texas law, the words and clauses of insurance contracts are strictly construed against the insurer. If a word or clause has more than one meaning, then the meaning favoring the insured must be applied. If the clause may be interpreted as a limiting term or as an exclusionary clause, the insured's reasonable construction of the clause must be adopted, even if the insurer's construction is more reasonable.

797 F.Supp. 563, 567 (W.D.Tex.1992) (internal citation omitted). Therefore, it was proper for the District Court to strictly construe the insurance policy against USF & G.

II. Motion for New Trial

We next address whether or not to analyze the District Court's denial of USF & G's motion for new trial pursuant to

6

FED.R.CIV.P. 59 on the grounds that trial counsel did not present timely dispositive case law supporting USF & G's prior motion for summary judgment. Rather than undertake this analysis, the Fifth Circuit advises that such endeavor is wholly unproductive because, "[o]rdinarily, a district court's decision not to grant a new trial under Rule 59(a) is not appealable." *Youmans v. Simon,* 791 F.2d 341, 349 (5th Cir.1986). An appeal from a denial of a new trial "merely restates the attack on the merits of the final judgment. It is from the final judgment that the appeal should be taken." *Government Financial Services v. Peyton Place,* 62 F.3d 767, 774 (5th Cir.1995) (quoting *Youmans,* 791 F.2d at 349). Thus, we proceed to analyze the final judgment in this matter rather than the procedural methodology of Rule 59.

STANDARD OF REVIEW

The Court of Appeals reviews a District Court's grant of summary judgment de novo and in the light most favorable to USF & G. *Thomas v. Price,* 975 F.2d 231, 235 (5th Cir.1992); *LeJeune v. Shell Oil Co.,* 950 F.2d 267, 268 (5th Cir.1992). Toops is required to demonstrate that there are no genuine issues of material fact and that he is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-49, 106 S.Ct. 2505, 2509-11, 91 L.Ed.2d 202 (1986); FED.R.CIV.P. 56(c). Toops is also required to establish all of the essential elements of his claim. *Fontenot v. Upjohn Co.,* 780 F.2d 1190, 1194 (5th Cir.1986). If Toops meets the initial burden, the burden then shifts to USF & G to disprove the claim. *Celotex Corp. v. Catrett,* 477 U.S. 317,

7

322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

III. Hired Auto Clause

According to the insurance policy at issue, Toops was required to prove that Dayton-Scott not only hired a "covered auto," in this case the tractor trailers driven by Williams and Davidson, but that the drivers of the hired autos were under the control of Dayton-Scott. The facts show that Dayton-Scott hired a licensed common carrier to provide transportation services and relied on the carrier to select and arrange for vehicles and drivers. Thus, Toops never made the connection between Rig Runner (the entity "hired") and Williams/Davidson (the drivers who drove the "auto"). Without such connection, the policy can not be enforced and USF & G can not be held liable for coverage.

Moreover, the facts show that Davidson was not even a Rig Runner employee driving a Rig Runner truck, but was an independent contractor who owned his own truck and was paid on commission. The District Court failed to make this distinction between hiring a company that provides transportation and hiring a truck. "[F]or a vehicle to constitute a hired automobile, there must be a separate contract by which the vehicle is hired or leased to the named insured for his exclusive use or control." *Sprow v. Hartford Ins. Co.,* 594 F.2d 418, 422 (5th Cir.1979); *see also Russom v. Insurance Co. of North America,* 421 F.2d 985, 993 (6th Cir.1970) ("Where there is a separate contract for hiring or leasing a vehicle in addition to an agreement to haul a particular load, courts have held that the vehicle becomes a "hired automobile.' ").

8

It is a further requirement of *Sprow* that in order for a vehicle to constitute a hired automobile it must be under the named insured's exclusive use or control. 594 F.2d at 422; *see also Liberty Mutual Ins. Co. v. American Employers Ins. Co.,* 556 S.W.2d 242, 244-45 (Tex.1977) (stating in a "own, hire, or borrow" provision, where the named insured did not have possession or control of the tractor-trailer rig, the rig was not covered).

The Fifth Circuit has also addressed the breadth of "hired auto" clauses and provided inquiries to determine whether a truck was under the possession or control of the insured. In *Johnson v. Royal Indem. Co.,* 206 F.2d 561 (5th Cir.1953), the Court made a distinction between a hired auto and an independent contractor, stating that the party hiring the truck:

1) Did not furnish gas or oil for the trucks and did not otherwise maintain the trucks;

2) Did not require trucks to be a particular size or require a certain number of loads per day;

3) Did not select individual truck drivers;

4) Could not fire the truck drivers;

5) Was "interested only in the results" of transporting from Point A to Point B; and

6) Did not assume "control" of the independent contractor's truck or driver by directly loading and unloading operations.

*Id.* at 563-64; *see also Chicago Ins. Co. v. Farm Bureau Mutual Ins. Co.,* 929 F.2d 372, 373-74 (8th Cir.1991) (applying Texas law and making similar findings).

Lastly, numerous courts have held that hiring an independent contractor will not create insurance coverage under a "hired auto"

9

clause. *Chicago Ins. Co.,* 929 F.2d at 374-75; *Transportation Indem. Co. v. Liberty Mut. Ins. Co.,* 620 F.2d 1368, 1371-72 (9th Cir.1980); *Royal Indem. Co.,* 206 F.2d at 564-65; *American Casualty Co. v. Denmark Foods,* 224 F.2d 461, 463-64 (4th Cir.1955) (truck used under an independent contract is not a hired auto). As a consequence, Toops never proved that Dayton-Scott separately hired the truck that Davidson was driving when he struck Toops' car, or that either Davidson or Rig Runner was using the truck with Dayton-Scott's permission; and lastly, Toops never disproved that Dayton-Scott hired the services of an independent contractor. Toops therefore failed to satisfy his burden of proof for summary judgment. Further evidence of this failure can be found in USF & G's argument of issue preclusion.

IV. Issue Preclusion

In the state court jury trial that preceded the federal action, a jury was asked whether Rig Runner and Dayton-Scott were engaged in a joint enterprise. The jury was instructed that a "joint enterprise" exists if there is:

1) An agreement, either express or implied, with respect to the enterprise or endeavor;

2) A common purpose;

3) A common business or pecuniary interest; and

4) An equal *right to direct and control the enterprise.*

(emphasis supplied). The jury answered "no." The jury was next asked whether Rig Runner and its driver were agents of Dayton-Scott at the time of the collision with Toops. The jury was instructed that:

10

> An AGENT, as applied to the factual scenario of this case, is a person in the service of another with the understanding, express or implied, that such other person *has a right of control as to the details of performance during the trip, which details you have found caused the injury.*

(emphasis supplied). Once again the jury answered "no."

When presented with the question of issue preclusion, the District Court in its summary judgment order dismissed such argument by stating, "[w]hether or not Rig Runner is found to be an insured under USF & G's policy with Dayton-Scott is a wholly independent issue from the question of whether Rig Runner was involved in an agency or joint venture relationship with Dayton-Scott." *Toops,* 871 F.Supp. at 290. Under Texas law, the doctrine of issue preclusion bars relitigation of any ultimate issue of fact previously litigated and essential to the ultimate judgment in the prior suit, regardless of whether the second suit is based on the same cause of action. *Daniels v. Equitable Life Assur. Soc. of U.S.,* 35 F.3d 210, 213 (5th Cir.1994). Moreover, "[o]nce an essential issue is actually litigated and determined, that issue is conclusive in a subsequent action between the same parties, *or persons in privity with them,* regardless of whether the second suit is based on the same cause of action...." *Id.* (citing *Van Dyke v. Boswell, O'Toole, Davis & Pickering,* 697 S.W.2d 381, 384 (Tex.1985); *Wilhite v. Adams,* 640 S.W.2d 875, 876 (Tex.1982). It is therefore clear that the jury interrogatories and answers were squarely on point in showing the lack of an essential element by Toops in the present appeal. That is, whether Dayton-Scott exercised control over Rig Runner sufficient enough to make Rig

11

Runner an insured under the USF & G policy. The jury in the prior case answered "no," and the District Court's dismissal of issue preclusion is therefore incorrect.

V. District Court's Interpretation of Hired Auto Clause

We finally address whether the District Court erred when it adopted the construction of the insurance policy that Rig Runner was covered by the policy. USF & G argues that the District Court unreasonably interpreted the insurance policy to cover Rig Runner. In cases dealing with insurance policies, certain rules of construction may be used to interpret the policy; however, if an insurance policy's provisions are expressed in clear and unambiguous language, the court may not use the rules of construction. *Adams*, 797 F.Supp. at 566. The District Court found, as a matter of law, that the provisions of (1)(a), (b) and (c) of the insurance policy were unambiguous on their face, and therefore there was no need to apply the rules of construction. *Toops*, 871 F.Supp. at 292.

USF & G argues that based on public policy, no reasonable corporation would pay premiums to insure third-parties against risks for which the corporation could not be liable. This argument is somewhat correct, although a plain reading of this allegedly unambiguous insurance policy that USF & G wrote, seems to say the contrary. The policy explicitly sets forth "who is an insured" and under (1)(b) states: "[a]nyone else while using with your permission a covered auto you own, hire or borrow ..." Such a reading, of course, is constrained by the case law in *Sprow* which

12

requires a showing of a separate contract and that the hired automobile was under the named insured's exclusive use or control. 594 F.2d at 422. Therefore, USF & G's argument is correct when taken in conjunction with *Sprow.*

## CONCLUSION

Based upon the discussion above, we hold the *Sprow* case to be controlling. The District Court erroneously granted summary judgment for the Appellees and denied summary judgment for the Appellant. The essential elements required by *Sprow* are lacking and therefore we REVERSE the order on cross-motions for summary judgment and RENDER judgment for Appellant USF & G.