# UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 98-30232

JOAN G. CELLA ARCENEAUX,

Plaintiff-Appellant,

versus

SHELL OIL CO; SHELL WESTERN,
EASTERN, AND PACIFIC, INC.,

Defendants-Appellees.

Appeal from the United States District Court
for the Western District of Louisiana
(96-CV-753)

October 27, 1999

Before POLITZ, HIGGINBOTHAM, and DAVIS, Circuit Judges.

POLITZ, Circuit Judge:[*]

The jury rejected Joan G. Cella Arceneaux's claim that Shell Oil Company

and Shell Western Eastern & Pacific, Inc.[1] are liable for trespass under Louisiana

law for injecting numerous barrels of salt water into her property. Finding no

---

[*]Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

[1]For simplicity's sake, we will refer to defendants as Shell.

reversible error, we affirm.

## BACKGROUND

Shell acquired an interest in the land at issue when it succeeded to a mineral lease executed in 1935 by Arceneaux's mother, Hazel Burdin Francisco. The mineral lease covered 17,000 acres in the Atchafalaya Basin and conveyed to Shell various rights in connection with the exploration for oil and gas, among them the exercise of any privileges "which may be necessary, useful or convenient to or in connection with any such operation conducted by [Shell] thereon, or on any adjacent lands." This provision, pivotal to Shell's defense in this action, is commonly referred to as an "adjacent lands" clause. Additionally, the mineral lease gave Shell the right to dispose of salt water produced on 400 acres of the covered land, the principal area of dispute in this case, hereinafter referred to as the "Yellow Zone."

In the 1960s Shell embarked on a major modernization of its facilities, including construction of a centralized salt water injection system on the property covered by the mineral lease. In connection with this modernization, Shell and Francisco entered into the Salt Water Disposal Agreement ("SWDA"), which applied to the land surrounding the Yellow Zone and encompassing the West Lake Verret Field, hereinafter referred to as the "Blue Zone". The SWDA authorized

Shell to drill three salt water disposal wells in the Blue Zone and to convert one oil and gas well to a salt water disposal well in the Yellow Zone. Additional wells could be drilled or converted upon prior payment by Shell to Francisco of $1000 per well. The SWDA granted Shell the right to dispose **only** of salt water that was **produced** in the Blue Zone. The agreement was to remain in effect for five years and could be extended for successive one year periods upon the payment of $1000 by Shell to Francisco. Shell annually made payments to extend the SWDA.

In 1974 Francisco and Shell consummated a Right of Way Agreement. This agreement gave Shell the right to install a pipeline for the handling of salt water from the West Lake Verret Field extending from the Yellow Zone to and past the Blue Zone.

In early 1993, Francisco donated an undivided one-half interest in the property in the Yellow Zone to Arceneaux. In that same year, Arceneaux retained an engineer who issued a report stating: (1) that Shell had failed to make the per well payment for ten wells that it had drilled or converted in the Yellow Zone, and (2) that Shell had injected millions of barrels of salt water in the Yellow Zone that originated on land largely outside the Blue Zone and consequently were not authorized by either the SWDA or the Right of Way Agreement. This land will be referred to as the "Red Zone". Shell conceded that it failed to make the per well

payments for the wells it had drilled or converted, but claimed that after it "discovered" this omission, it tendered all sums due, including interest. Relying on the "adjacent lands" clause in the mineral lease -- which Shell construed as authorizing injection of salt water produced anywhere in the West Lake Verret Field -- Shell denied that its injection of salt water was unauthorized.

Francisco died in 1994, and her property was divided among Arceneaux and her siblings as follows: 5/12 to Arceneaux; 5/12 to Eugene Cella, Arceneaux's brother; and 1/6 to Diane Cella Jamison, Arceneaux's sister. Shell settled with Jamison in an agreement that reaffirmed the mineral lease and the SWDA and that "grant[e]d, ratif[ied,] and confirm[ed]" Shell's right to dispose of salt water anywhere within the West Lake Verret Field, including the Red Zone.

Arceneaux filed this action, initially claiming only damages relating to her ownership of the property after she acquired the surface rights in 1993. Arceneaux alleged that because Shell breached and nullified the SWDA by failing to make the per well payments when they first became due, Shell was a trespasser. After her mother's succession was complete, Arceneaux amended her complaint, seeking damages for the allegedly impermissible salt water injection, including the period during which her mother owned the property. A jury returned a verdict in favor of Shell, and the trial court denied Arceneaux's motion for a new trial under Fed. R.

4

Civ. P. 59(a). This appeal followed.

## ANALYSIS

Arceneaux's primary issue on appeal has been rendered nugatory by a recent decision by the Louisiana Supreme Court holding that an implied requirement of mutual benefit does not attach to "adjacent lands" clauses.[2] There has been no change in law along the lines advanced by Arceneaux and, therefore, we do not address her contention that a supervening change of law warrants a reversal of the judgment notwithstanding her failure to raise this issue in the trial court.

Arceneaux next challenges the trial court's failure to order a new trial, contending that the jury verdict is against the great weight of evidence. Shell correctly points out that, as a general matter, "a district court's decision not to grant a new trial under Rule 59(a) is not appealable."[3] It is proper in the present context, however, to "treat the appeal as being from the original judgment rather than [to] dismiss the appeal on technical grounds."[4] We therefore examine the verdict under the sufficiency of evidence standard.

---

[2] **Caskey v. Kelly Oil Co.**, 1999 WL 452125, __ So.2d __ (La. 1999).

[3] **Toops v. Gulf Coast Marine, Inc.**, 72 F.3d 483 (5th Cir. 1996).

[4] **Campbell v. Hewitt, Coleman & Assocs., Inc.**, 21 F.3d 52, 53 n.1 (4th Cir. 1994) (citations omitted).

5

Under this standard, we pay great deference to the jury verdict. We view the evidence "in the light and with all reasonable inferences most favorable to the [non-moving] party" and will reverse only "if the facts and inferences point so strongly and overwhelmingly in favor of [the moving] party that the [c]ourt believes that reasonable [persons] could not arrive at [the verdict reached by the jury]."[5]

The jury was charged, without objection from Arceneaux, that it "need only determine whether, considering all the evidence, Shell injected salt water and maintained surface facilities without a right to do so." In contending that Shell lacked the right to do so, Arceneaux presented a case that was not without persuasive or logical appeal. The crux of her theory at trial was that Shell would not, and did not, pay twice for the same rights. Arceneaux maintained that if, as Shell insisted, the "adjacent lands" clause of the mineral lease broadly authorized it to inject salt water produced anywhere in the West Lake Verret Field, then there would have been no need for Shell to enter into the SWDA, which granted Shell a narrower right to inject salt water. Contrasting the "adjacent lands" clause of the mineral lease, which does not mention salt water disposal, with the SWDA, which

---

[5] **See Boeing Co. v. Shipman**, 411 F.2d 365, 374 (5th Cir. 1969) (en banc), **overruled on other grounds by Gautreaux v. Scurlock Marine, Inc.**, 107 F.3d 331 (5th Cir.1997) (en banc).
.

6

very specifically delineates Shell's rights and obligations with respect to such disposal, Arceneaux asserted that it would be unreasonable to read the mineral lease as intending to give Shell blanket injection rights. Arceneaux also introduced internal Shell documents suggesting that Shell did not believe that it was securing overlapping rights under the SWDA. Arceneaux further maintained that in entering the Right of Way Agreement, Shell acknowledged that the Red Zone was not adjacent to the Yellow Zone. If it were adjacent Shell would not have needed to obtain rights to build a pipeline extending to the Red Zone.

Shell countered that the mineral lease's "adjacent lands" clause authorized the injection in all of the West Lake Verret Field because such was "necessary, useful or convenient" to the gas and oil exploration Shell conducted in the Yellow Zone. Shell introduced evidence that it entered into the SWDA and the Right of Way Agreement to obtain redundant rights, i.e., rights which it already had under the mineral lease. According to Shell, it secured such back-up agreements in case the mineral lease expired while Shell's operations in the West Lake Verret Field were still ongoing.

Both Arceneaux and Shell presented qualitatively substantial evidence to support their conflicting accounts. While the jury certainly could have credited Arceneaux's evidence, it was not obliged to do so. The jury was entitled to accept

7

Shell's testimonial and documentary evidence reflecting why Shell negotiated for redundant rights. Though this theory of redundant rights may sound a bit peculiar and counterintuitive at first blush,[6] we cannot say that it is so implausible that no reasonable juror could have found in favor of Shell thereon. Our review of the trial transcript leaves us in full agreement with the trial judge's conclusion that "there was ample evidence to support the jury's verdict."

Arceneaux's final argument implicates an evidentiary ruling of relatively minor importance. She urges that the trial court abused its discretion[7] in determining that Fed. R. Evid. 408 barred admission of Shell's settlement agreement with Jamison. Rule 408 precludes parties from introducing evidence relating to compromise "to prove liability . . . of [a] claim," but permits such evidence when it is offered for other purposes. Notwithstanding her somewhat strained efforts to mold her purpose in offering the settlement evidence into one acceptable under Rule 408, it is apparent that with the settlement agreement Arceneaux hoped to prove that Shell believed that the mineral lease did not afford it all of the rights that it needed. This, of course, falls squarely within the strictures

---

[6]Were we sitting not as reviewing judges but as jurors, we may well have reached a different conclusion. But to the extent we might have a mere difference of opinion with the jurors, their view must prevail.

[7]**See South Pacific Transp. Co. v. Chabert**, 973 F.2d 441 (5th Cir. 1992).

8

of Rule 408.  Therefore, we perforce conclude that the trial court acted well within its discretion in excluding the settlement agreement.

For these reasons, the judgment appealed is in all respects AFFIRMED.